UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, )<br>6824 Lexington Avenue )<br>Los Angeles, CA 90038, )<br> )<br>    and )<br> )<br>BUZZFEED, INC., )<br>111 E. 18th St. )<br>New York, NY 10003, )<br> )<br>      PETITIONERS )<br>   vs. )<br> )<br>YOGANANDA D. PITTMAN, )<br>Acting Chief, )<br>United States Capitol Police, )<br>119 D St., N.E. )<br>Washington, DC 20510, )<br> )<br>    and )<br> )<br>MICHAEL BOLTON, )<br>Inspector General of the )<br>United States Capitol Police, )<br>119 D St., N.E. )<br>Washington, DC 20510, )<br> )<br> )<br>      RESPONDENTS )<br> )<br> )<br>_____ ) | Judge _____<br>Civil Action No. _____ |

## PETITION FOR A WRIT OF MANDAMUS

Following the insurrection at the United States Capitol, the United States Capitol Police

(USCP) have faced intense public scrutiny. How could such a well-funded police agency charged

with protecting the seat of American democracy have been so unprepared for what transpired on

January 6, 2021? Few answers have been forthcoming from the "infamously opaque" police

agency.[1] Even before the insurrection, the USCP had been largely unresponsive to requests from the media for basic information about its operations.[2] Further, because the USCP is a legislative agency and therefore not subject to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(f)(1), the public cannot rely on that law to shine a light on the USCP's operations and activities.

Seeking to learn more about how the USCP functions, Jason Leopold, Senior Investigative Reporter for BuzzFeed News, sent letters to the USCP and its Inspector General requesting copies of certain documents pursuant to the common law right of access to public records. Having not received copies of the records to which he is entitled as of right, Mr. Leopold and his employer BuzzFeed News hereby petition this Court for an order in the nature of a writ of mandamus directing Respondents to produce the requested public records, subject to appropriate redactions.

### STATEMENT OF FACTS

1.   Petitioner Jason Leopold is a Senior Investigative Reporter for BuzzFeed News covering a wide range of issues. Petitioner BuzzFeed, Inc. (BuzzFeed) is a digital media company with a news and entertainment network that reaches hundreds of millions of people globally. Mr. Leopold seeks records he intends to use in writing one or more news stories for his employer regarding the USCP.

2.   The Capitol Police is headed by a Chief who is appointed by, and serves at the pleasure of, the Capitol Police Board (CPB). 2 U.S.C. § 1901. Respondent Yogananda Pittman is the Acting Chief of the United States Capitol Police.

---

[1] "Riots Shine Light on 'Infamously Opaque' Capitol Police," *Government Executive* (Jan. 8, 2021), *available at* https://www.govexec.com/management/2021/01/riots-shine-light-infamously-opaque-capitol-police/171281 (last visited Feb. 18, 2021).

[2] "Capitol Police, a department shrouded in secrecy," *Roll Call* (June 15, 2020), available at https://www.rollcall.com/2020/06/15/capitol-police-a-department-shrouded-in-secrecy (last visited Feb. 18, 2021).

3.   Within the USCP, there is an Office of the Inspector General which is headed by the Inspector General of the United States Capitol Police. 2 U.S.C. § 1909(a). Respondent Michael Bolton is the Inspector General of the United States Capitol Police.

4.   On January 28, 2021, Mr. Leopold sent identical letters to the USCP's Public Information Office (PIO) and the Office of the Inspector General (OIG) requesting access to: Inspector General semiannual reports for 2015 forward; other Inspector General reports, including audits for 2008 forward; annual financial statements and audits of annual financial statements for 2015 forward; semiannual reports of disbursements for 2015 forward; USCP written directives in effect on January 6, 2021; and demonstration permits, denials, or other written memorials of final decisions relating to permits for public gatherings on the Capitol grounds for January 6, 2021. (Ex. 1.)

5.   Mr. Leopold received an email dated February 11, 2021 from James Joyce, counsel for the U.S. Capitol Police, which stated Mr. Leopold may contact OIG regarding the first three parts of his request; that Mr. Leopold could obtain the Statements of Disbursements by requesting them from the House Legislative Resource Center; that USCP directives are not public records and will not be provided; and that USCP Special Events permits do not include public records and will not be provided. (Ex. 2.)

6.   On February 16, 2021, at Mr. Joyce's suggestion, Mr. Leopold submitted a request to the House Legislative Resource Center for the Statements of Disbursements. (Ex. 3.)

7.   As of the filing of this Petition, Mr. Leopold has not received any further responses from the USCP, OIG, or House Legislative Resource Center.

## ARGUMENT

### I.      Jurisdiction

Although most cases involving the common law right of access to government documents involve records in the custody of the judicial branch, the D.C. Circuit has made clear that the right applies to all three branches of the federal government and is not limited to records similar

to court documents. *Wash. Legal Found. v. United States Sentencing Comm'n*, 89 F.3d 897, 903

(D.C. Cir. 1996) (hereinafter "*WLF II*"); *Ctr. for Nat'l Sec. Studies v. United States DOJ*, 331

F.3d 918, 936 (D.C. Cir. 2003) ("This Court has held that the common law right of access

extends beyond judicial records to the 'public records' of all three branches of government, and

we are bound by our precedent") (internal citation omitted).

Under *WLF II*, an individual claiming a common law right of access to public records may

petition the court for a writ of mandamus directed to the relevant public officials. 89 F.3d at 901.

A court possesses jurisdiction over a mandamus action, and sovereign immunity will be no bar to

suit, if the government owes a duty to the petitioner to permit access to the records and such

access is denied. *Id.* This conclusion is the result of the "*Larson-Dugan* exception to sovereign

immunity" which provides that "[i]f a plaintiff seeks a writ of mandamus to force a public

official to perform a duty imposed upon him in his official capacity, . . . no separate waiver of

sovereign immunity is needed." *Id.* Thus, "the question of jurisdiction merges with the question

on the merits[.]" *Id.*

## II.     Petitioners have a common-law right of access to the requested records.

The D.C. Circuit has created a "two-step inquiry" for determining "whether a document must

be disclosed pursuant to the common law right of access[.]" *Id.* at 902. Under the first step, "the

court must decide whether the document sought is a public record[.]" *Id.* (internal quotation

marks omitted). If the document is a public record, "then the court should proceed to balance the

government's interest in keeping the document secret against the public's interest in disclosure."

*Id.* For the reasons set forth below, the requested documents are "public records" and the

public's interest in disclosure outweighs the government's interest in keeping the documents

secret.

## A.  The documents are public records.

For purposes of the common law right of access, the D.C. Circuit has defined a "public record" as "a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." *Id.* at 905. In contrast, records that are "preliminary, advisory, or, for one reason or another, do not eventuate in any official action or decision being taken" are not public records subject to the common law right of access. *Id.* Examples of documents that would fit within the D.C. Circuit's definition of "public record" include "a report or record of government expenditures," "documents kept in order to record real estate transactions," and a "list of tax abatements passed by a city council[.]" *Id.*

### 1.  Inspector General Semiannual Reports

Pursuant to 2 U.S.C. § 1909(c)(2), the USCP "Inspector General shall prepare and submit semiannual reports summarizing the activities of the Office in the same manner, and in accordance with the same deadlines, terms, and conditions, as an Inspector General of an establishment under section 5 (other than subsection (a)(13) thereof) of the Inspector General Act of 1978, (5 U.S.C. App. 5)." Mr. Leopold requested all semiannual reports summarizing the activities of the USCP Office of the Inspector General for the period of 2015 forward.

Since 2 U.S.C. § 1909(c)(2) specifies that the USCP IG semiannual reports to Congress are to be prepared and submitted in accordance with the same "terms" and "conditions" that apply to other Inspectors General under the Inspector General Act of 1978 (hereinafter "IG Act"), the public disclosure provision of the IG Act applies to the requested records. Section 5(c) of the IG Act provides that "[w]ithin sixty days of the transmission of the semiannual reports of each Inspector General to the Congress, the head of each establishment shall make copies of such report available to the public upon request and at a reasonable cost." Under 2 U.S.C. § 1909(c)(2), "For purposes of applying section 5 of such Act to the Inspector General, the Chief

of the Capitol Police shall be considered the head of the establishment." Thus, Chief Pittman has a duty to make copies of the semiannual reports available to the public upon request.[3]

Petitioners are entitled to disclosure of the IG semiannual reports for two reasons. First, the IG Act, as incorporated through 2 U.S.C. § 1910(a), itself creates the duty to disclose these records "upon request" to "the public" after 60 days have elapsed since transmission to Congress. Petitioners have made such a request and the records were transmitted to Congress more than 60 days ago.

Second, regardless of the public access provision of the IG Act, the semiannual reports fall within the D.C. Circuit's definition of a "public record" because they are documents created and kept for the purpose of memorializing the official actions of the Office of the Inspector General. The semiannual reports are not internal documents reflecting candid evaluations of the agency's functioning, but rather are created under the IG Act for the specific purpose of communicating the activities of each OIG to Congress and the public.

**2. Inspector General Reports and Audits**

Mr. Leopold also requested all other OIG reports, including audits, for the period 2018 forward. The authority of the USCP OIG to conduct investigations and to carry out audits derives from 2 U.S.C. § 1909(c)(1),  which provides, that the USCP "Inspector General shall carry out the same duties and responsibilities with respect to the United States Capitol Police as an Inspector General of an establishment carries out with respect to an establishment under section 4 of the Inspector General Act of 1978, (5 U.S.C. App. 4), under the same terms and conditions which apply under such section." Under § 4(e)(1) of the IG Act, "whenever an Inspector General issues a recommendation for corrective action to the agency, the Inspector General . . . (C) not

---

[3] As a practical matter, instead of awaiting requests, executive branch establishments typically fulfill this mandate by posting the semiannual reports to their websites. *See e.g.*, Department of Homeland Security, Office of Inspector General, "Semiannual Reports to Congress," available at https://www.oig.dhs.gov/reports/semiannual

later than 3 days after the recommendation for corrective action is submitted in final form to the head of the establishment, [shall] post the document making a recommendation for corrective action on the website of the Office of Inspector General." Similarly, under § 8M(b)(1)(A) of the IG Act, "any audit report, inspection report, or evaluation report (or portion of any such report)" must be posted to the IG's website within three days after it is submitted in final form to the head of the Federal agency.

As with the semiannual reports, Petitioners are entitled to the requested USCP IG audits and reports because these records are required to be made public by statute. The requested documents are also "public records" for purposes of the common law right of access because they record the official actions of the USCP IG. Final audits and reports are not interim drafts or working papers, but rather memorialize what the OIG has officially done, and this memorialization takes the form of a report that is intended for dissemination to the general public within three days after being submitted in final form to the head of the agency.

### 3.   Annual Financial Reports and Financial Report Audits

Pursuant to 2 U.S.C. § 1903(b)(2), "The Chief Administrative Officer shall . . . (D) Prepare annual financial statements for the Capitol Police, and such financial statements shall be audited by the Inspector General of the Capitol Police or by an independent public accountant, as determined by the Inspector General." Mr. Leopold requested, for the period of 2015 forward, such (1) annual financial statements and (2) audits.

In settling upon a definition of a "public record" in *WLF II*, the D.C. Circuit looked to the common law of the states and listed as examples of public records "a report or record of government expenditures" and "the financial records of a board of education." 89 F.3d at 904-05. Thus, the annual financial statements requested by Mr. Leopold are public records under the D.C. Circuit's definition of the term.

7

Similarly, audits of the financial statements of government accounts are public records for assessing the common law public right of access. The Supreme Court of Arkansas held that the common law right of access to a government-funded financial audit of the sheriff's official bank account "cannot . . . be questioned." *Collins v. State*, 143 S.W.2d 1, 9 (Ark. 1940) ("[T]he public's right of access to an audit relating to the collection and disposal of nearly five million tax dollars— an audit for which fifteen hundred dollars of county money was judiciously spent— cannot, under any statute or rule of construction, be questioned.") Likewise, the D.C. Circuit noted in *WLF II* that an "official auditor's report of state spending" was deemed to be a public record. *WLF II*, 89 F.3d at 904.

The annual financial statements and audits are also public records because they are required by law to be kept. The D.C. Circuit's opinion in *WLF II* did not resolve the question of whether "any document required by law to be kept is necessarily a public record for the purpose of the federal common law right of access[.]" 89 F.3d at 906. Instead, assuming *arguendo* the correctness of that proposition, the D.C. Circuit found "no basis for concluding that the documents in question were required by law to be kept." *Id.* at 907.

In this case, Mr. Leopold's request quoted directly from the requirements of 2 U.S.C. § 1903(b)(2) that the documents he sought "shall" be prepared and audited. Therefore, there can be little dispute that the requested documents were required by law to be kept. Since the statute directs the creation of annual financial statements and audits, it is necessarily the case that the financial statements and audits are created, in part, for "memorializing or recording . . . [a] matter of legal significance[.]"

### 4. Semiannual Report of Disbursements

USCP conceded in its response to Mr. Leopold that these documents are public records. (Ex. 2.)

### 5.  USCP Written Directives

The Chief of the U.S. Capitol Police issues written directives pursuant to their authority as chief executive of the USCP and responsibility for the day-to-day operation and administration of the agency. (Ex. 4 at 1-2.) These written directives set forth agency policy and create rules to govern the work of the agency. (Ex. 4 at 2.) USCP employees are required to obey these directives. (Ex. 4 at 2.)

Mr. Leopold requested all United States Capitol Police written directives that were in force as of January 6, 2021. These documents are public records because they are created and kept for the purpose of memorializing and recording official USCP policy and are binding on agency employees, thus endowing them with legal significance. Though the written directives embody the rules of a legislative body rather than an executive agency, they are nonetheless legally cognizable. *Yellin v. United States*, 374 U.S. 109, 114 (1963) ("It has been long settled, of course, that rules of Congress and its committees are judicially cognizable.")

### 6.  Final Decisions Relating to Permits for Public Gatherings on the Capitol Grounds for January 6, 2021

Demonstration permits for the Capitol Grounds are "issued pursuant to section 156 of Article XIX of the Traffic and Motor Vehicle Regulations for the United States Capitol Grounds (the regulation). That regulation, promulgated by the Capitol Police Board in 1976 on the authority of Public Law 570, 80th Congress, 60 Stat. 720 (40 U.S.C. § 212b), established limitations on the issuance of permits for demonstrations on the Capitol Grounds." *Cmty. for Creative Non-Violence v. Carvino*, 654 F. Supp. 827, 828 (D.C. Cir. 1986). Mr. Leopold requested demonstration permits, denials, or other written memorials of final decisions relating to permits for public gatherings on the Capitol grounds for January 6, 2021.

The requested documents clearly fall within the D.C. Circuit's definition of a "public record." Any issued permit or final decisions relating to a permit application memorialize an

official action of legal significance and are not preliminary. At common law, documents relating
to the issuance of permits have been considered public records. *Des Moines Register & Tribune
Co. v. Hildreth*, 181 N.W.2d 216, 219 (Iowa 1970) ("We conclude the ruling of the trial court
that the records of the issuance of permits to carry concealed weapons are public records is
correct.")

**B.  The public's interest in disclosure outweighs the government's interest in secrecy.**

As the response from the USCP's PIO did not assert the existence of any need for secrecy
and the OIG did not respond, Petitioners are left without any explanation from the agency as to
why secrecy is necessary. However, the public interest in the requested records is clear.

Inspector General semiannual reports and other reports and audits will shed light on both the
functioning of the agency and the functioning of the OIG. The IG Act's commandment to make
these types of documents promptly available to the public represents Congress's determination
that there is a strong public interest in disclosure of the information in these records. Since
Inspectors General are charged with rooting out waste, fraud, and abuse in government, IG Act §
2, the public has a particularly keen interest in learning about what the USCP's IG has
uncovered.

With respect to financial statements, taxpayers have an unquestionably significant interest in
how their money is being spent. *See Multi AG Media LLC v. Dep't of Agric.*, 515 F.3d 1224,
1232 (D.C. Cir. 2008). The public interest is particularly acute here because of the amount of
money involved – the USCP's budget is over half a billion dollars for FY 2021. *See supra*, n.2.
Audits of financial statements are prepared to "determine[] whether the financial reports . . . have
been prepared in accordance with generally accepted accounting principles." *United States v.
Arthur Young & Co.*, 465 U.S. 805, 811 (1984). Disclosure of these audits is therefore essential
for the public to have faith in the accuracy of the USCP's financial records.

Likewise, with respect to Statements of Disbursements, the public has an interest in knowing how USCP funds are being disbursed. At this time, neither the USCP nor the House Legislative Resource Center have asserted any need to withhold part or all of these statements.

The USCP's written directives are necessary for the public to understand the rules by which the agency conducts its business. Secret policing policies are anathema to a democracy. *See* B. Friedman, "ARTICLE: Secret Policing," 2016 U Chi Legal F 99, 99 (2016) ("[T]here cannot be democratic engagement with policing if what those agencies do and how they do it is kept from the people. This is true for all policing agencies in the United States[.]") While certain information in the written directives may be appropriately redacted, there is no need for wholesale secrecy, as demonstrated by the fact that the public manuals of the Chicago Police Department, Seattle Police Department, Los Angeles Police Department, and notably the District of Columbia's Metropolitan Police Department are posted on those agencies' websites.[4] Further undermining any potential claim that categorical secrecy is needed, a few USCP written directives are already in the public domain through entry into this Court's ECF system in connection with litigation. *See e.g.*, *Breiterman v. United States Capitol Police*, Case No. 1:16-cv-893-TJK (D.D.C. June 28, 2017) [ECF dkt: 27-5] (Written Directive 2053.013) (attached to this petition as Exhibit 4); *Anyaso v. U.S. Capitol Police*, Case No. 1:12-cv-1327-ESH [ECF dkt: 17-5] (D.D.C. Dec. 16, 2013) (Written Directives PRF 1.3 and TRF 1.4); *Moran v. United States Capitol Police*, Case No. 1:12-cv-801-ABJ [ECF dkt: 17-2] (D.D.C. Mar. 10, 2014) (Written Directive PRF 1.3); *Sourgoutsis v. U.S. Capitol Police*, Case No. 1:16-cv-1096-KBJ [ECF dkt: 45-9] (D.D.C. Nov. 27, 2017) (Written Directive 2052.004).

Finally, with respect to decisions regarding permits for the January 6, 2021 public assembly, there is both a general public interest in disclosure of this type of information and a specific

---

[4] Chicago Police Department, https://perma.cc/B5MY-FD8R; Seattle Police Department https://perma.cc/AU5K-6784; Los Angeles Police Department, https://perma.cc/E558-MZXT; Metropolitan Police Department, https://perma.cc/EZ4R-D4C5/.

public interest in disclosure of information about this particular permit. The public has a general interest in learning about the outcome of the adjudication of a matter before an agency that affects the use of public property, the employment of police resources, and the flow of traffic. Further, adjudications of permits for demonstrations are of particular public significance due to their impact on First Amendment rights.

Specifically with respect to the January 6, 2021 public gathering, the public has an interest in learning about the existence of a permit, its terms, and any modifications to its terms. This information would allow the public to discover what the USCP should reasonably have been prepared to handle in terms of crowd control and protection of life and property.

As far any purported need for secrecy, it is notable that the National Park Service did not seem to believe any significant need for wholesale nondisclosure existed, as demonstrated by the fact that they released a lightly redacted permit for the rally that preceded the march to the Capitol on January 6, 2021. *See* U.S. Park Police Permit #21-0278 (amended), *available at* https://www.nps.gov/aboutus/foia/upload/21-0278-Women-for-America-First-Ellispse-permit_REDACTED.pdf (last visited Feb. 22, 2021). (Ex. 5.)

PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request that this Court order Respondents to produce the Inspector General semiannual reports for 2015 forward; other Inspector General reports, including audits for 2008 forward; annual financial statements and audits of annual financial statements for 2015 forward; USCP written directives in effect on January 6, 2021; and demonstration permits, denials, or other written memorials of final decisions relating to permits for public gatherings on the Capitol grounds for January 6, 2021.

With respect to the semiannual reports of disbursements for 2015 forward, Petitioners are not seeking to compel disclosure of these records at this time because the USCP indicated that Mr.

Leopold could obtain the documents from the House Legislative Resource Center. While USCP cannot avoid its obligations under the common law by directing Mr. Leopold to obtain the documents from another entity, to avoid unnecessary litigation Mr. Leopold will await a timely response from the House Legislative Resource Center. However, Petitioners reserve the right to seek to compel these records should the semiannual reports of disbursements for 2015 onwards not be promptly provided.

Respectfully Submitted,

   /s/ Jeffrey Light
    Jeffrey L. Light
    D.C. Bar #485360
    1712 Eye St., NW
    Suite 915
    Washington, DC 20006
    (202)277-6213
    Jeffrey@LawOfficeOfJeffreyLight.com

    *Counsel for Petitioners*