**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JASON LEOPOLD; BUZZFEED, INC.,

       Plaintiffs,

  v.

J. THOMAS MANGER, in his official capacity
as Chief, U.S. Capitol Police; MICHAEL
BOLTON, in his official capacity as Inspector
General of the U.S. Capitol Police,

       Defendants.

Case No. 1:21-cv-00465-BAH

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.    THE U.S. CAPITOL POLICE AND THE USCP INSPECTOR GENERAL....................... 2

II.   PLAINTIFFS' REQUEST AND THIS LITIGATION.................................................... 3

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ..................................................................................................................... 5

I.    SOVEREIGN IMMUNITY BARS THIS ACTION. ..................................................... 5

II.   PLAINTIFFS' CLAIMS LACK MERIT. .................................................................. 7

    A.   The Inspector General Act of 1978 does not compel OIG to release the requested
       reports. ................................................................................................ 8

       1.   2 U.S.C. § 1909(c)(2) does not require OIG to make its semiannual reports
          available to the public. ................................................................. 8

       2.   2 U.S.C. § 1909(c)(1) does not require OIG to post recommendations or reports  to
          its website................................................................................. 10

    B.   Plaintiffs have no common law right of access to the requested OIG reports and
       many of the USCP directives because 2 U.S.C. § 1979 prohibits their public disclosure.
       ................................................................................................. 11

       1.   The Capitol Police Board has prohibited the disclosure of the OIG reports under  2
          U.S.C. § 1979.......................................................................... 12

       2.   A significant fraction of the written directives in effect on January 6, 2021 are
          security information whose disclosure is prohibited. ........................... 14

    C.   The requested OIG reports and USCP written directives are not "public records" to
       which the common law right of access applies......................................... 14

       1.   The requested OIG reports are not public records. ............................... 14

       2.   The USCP's internal written directives are not public records.................. 17

CONCLUSION .................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Block v. North Dakota,*
   461 U.S. 273 (1983) ........................................................................................... 5

*City of Milwaukee v. Illinois,*
   451 U.S. 304 (1981) ......................................................................................... 12

*Cofield v. United States,*
   64 F. Supp. 3d 206 (D.D.C. 2014) ................................................................... 6

*Ctr. for Nat'l Sec. Studies v. DOJ,*
   331 F.3d 918 (D.C. Cir. 2003) ....................................................................... 11

*Dist. of Columbia v. United States,*
   67 Fed. Cl. 292 (2005) ..................................................................................... 2

*Dugan v. Rank,*
   372 U.S. 609 (1963) ......................................................................................... 6

*Fraternal Order of Police v. Library of Cong.,*
   639 F. Supp. 2d 20 (D.D.C. 2009) ................................................................... 2

*Higg-A-Rella, Inc. v. Cty. of Essex,*
   660 A.2d 1163 (1995) ..................................................................................... 15

*In re New York Times Co. to Unseal Wiretap & Search Warrant Materials,*
   577 F.3d 401 (2d Cir. 2009) ........................................................................... 12

*Jam v. Int'l Fin. Corp.,*
   139 S. Ct. 759 (2019) ..................................................................................... 11

*Lane v. Peña,*
   518 U.S. 187 (1996) ......................................................................................... 6

*Larson v. Domestic & Foreign Commerce Corp.,*
   337 U.S. 682 (1949) ......................................................................................... 6

*Lomax v. Ortiz-Marquez,*
   140 S. Ct. 1721 (2020) ..................................................................................... 6

*McLean v. United States,*
   566 F.3d 391 (4th Cir. 2009) ........................................................................... 6

*Metlife, Inc. v. Fin. Stability Oversight Council,*
   865 F.3d 661 (D.C. Cir. 2017) ....................................................................... 12

*Pentagen Technologies International v. Committee on Appropriations*,
   20 F. Supp. 2d 41 (D.D.C. 1998) ................................................................. 17

*Pollack v. Hogan*,
   703 F.3d 117 (D.C. Cir. 2012) ...................................................................... 6

*Pro-Football, Inc. v. Harjo*,
   284 F. Supp. 2d 96 (D.D.C. 2003) ................................................................ 5

*Schwartz v. DOJ*,
   435 F. Supp. 1203 (D.D.C. 1977) ............................................................... 14

*United States v. Choi*,
   818 F. Supp. 2d 79 (D.D.C. 2011) ................................................................ 7

*United States v. Mitchell*,
   463 U.S. 206 (1983) ...................................................................................... 6

*United States v. Sater*,
   No. 98-CR-1101, 2019 WL 3288389 (E.D.N.Y. July 22, 2019) .................. 17

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
   17 F.3d 1446 (D.C. Cir. 1994) .................................................................... 14

* *Wash. Legal Found. v. U.S. Sentencing Comm'n*,
   89 F.3d 897 (D.C. Cir. 1996) ............................................................... *passim*

**Statutes**

2 U.S.C. § 1901 ................................................................................................. 2

2 U.S.C. § 1909 ................................................................................................. 3

2 U.S.C. § 1909(b)(1) ....................................................................................... 3

2 U.S.C. § 1909(c) ............................................................................................ 3

* 2 U.S.C. § 1909(c)(1) .................................................................................. 9, 10

* 2 U.S.C. § 1909(c)(2) ................................................................................... 8, 9

* 2 U.S.C. § 1979 ...................................................................................... *passim*

2 U.S.C. § 1979(a) .......................................................................................... 12

2 U.S.C. § 1979(b) .......................................................................................... 12

2 U.S.C. § 1979(c) .......................................................................................... 13

5 U.S.C. § 552(b)(2) ................................................................................................ 18

5 U.S.C. § 552(f) ..................................................................................................... 10

5 U.S.C. § 552(f)(1) ................................................................................................ 11

5 U.S.C. § 551(1)(A) ........................................................................................... 1, 11

28 U.S.C. § 1361 ....................................................................................................... 6

Pub. L. No. 104-208, 110 Stat. 3009 (1996) ............................................................ 8

Pub. L. No. 108-7, 117 Stat. 11 (2003) .................................................................... 2

Pub. L. No. 109-55, 119 Stat. 565 (2005) ................................................................ 3

Pub. L. No. 114-317, 130 Stat. 1595 (2016) .......................................................... 10

**Rules**

Federal Rule of Civil Procedure 56 .......................................................................... 4

**INTRODUCTION**

Plaintiffs Buzzfeed and Jason Leopold seek from Defendants the U.S. Capitol Police (the USCP or the Department) and the Capitol Police Inspector General a variety of internal documents spanning multiple categories and dating back to 2008 and through the events of the Capitol insurrection on January 6, 2021.  Plaintiffs have sought *all* of the Inspector General's reports issued since 2008.  They have sought all of the USCP's written directives in effect on January 6, 2021.  And while Plaintiffs also sought the USCP's disbursement reports since 2015 and public permit information for the Capitol Grounds on January 6, Defendants have since provided those materials.  Because the USCP and its Inspector General are part of the Legislative Branch, they are not subject to the Freedom of Information Act (FOIA).  5 U.S.C. §§ 551(1)(A), 552(f)(1).  Plaintiffs therefore bring this suit not under FOIA but under an asserted "common law right of access" and what they claim are dedicated statutory entitlements to the requested OIG information.  First Am. Compl. ¶¶ 8, 9, 12, ECF No. 12 (Compl.).  Plaintiffs are not entitled to the information, however, for multiple reasons.  The Court should therefore enter summary judgment in favor of Defendants.

First, Plaintiffs have sought to sue part of the Legislative Branch without identifying an unequivocal congressional waiver of sovereign immunity, as is required for this Court to have jurisdiction.  Plaintiffs' suit thus fails for a lack of subject matter jurisdiction.  Second, Plaintiffs have misread the provisions of the Inspector General Act of 1978 which, Plaintiffs maintain, grant them an entitlement to the USCP Inspector General's reports.  Their statutory claims therefore cannot proceed.  Third, even if Plaintiffs could overcome sovereign immunity, some of the requested documents, including all of those sought from the Inspector General and a significant fraction of the USCP written directives, are prohibited from disclosure because they are security information whose release has not been approved by the Capitol Police Board.  *See* 2 U.S.C. § 1979.  Finally, even apart from those deficiencies in their claims, Plaintiffs lack any right to the

1

materials at issue because they are not "public records" cognizable under the common law right of access.  Plaintiffs have no statutory or common law right of access to any of the documents they have sought, and Defendants are therefore entitled to summary judgment.

## BACKGROUND

## I.  THE U.S. CAPITOL POLICE AND THE USCP INSPECTOR GENERAL

The U.S. Capitol Police is a law enforcement agency within the Legislative Branch.  *See Fraternal Order of Police v. Library of Cong.*, 639 F. Supp. 2d 20, 22 (D.D.C. 2009); *Dist. of Columbia v. United States*, 67 Fed. Cl. 292, 327 (2005).  It is charged with safeguarding the Congress and its Members, employees, and visitors, and congressional buildings and grounds from crime, disruption, and terrorism.  The mission of the USCP is to protect and secure Congress so it can fulfill its constitutional and legislative responsibilities in a safe, secure, and open environment. Pursuant to statute, the USCP is headed by the Chief of the Capitol Police, and carries out its mission under the direction of the Capitol Police Board.  2 U.S.C. §§ 1901, 1961(a), 1969(a); *see Dist. of Columbia*, 67 Fed. Cl. at 326 ("The Capitol Police is an entity created by Congress and overseen by the Capitol Police Board, which consists of the Sergeant of Arms of the United States Senate, the Sergeant of Arms of the House of Representatives, and the Architect of the Capitol.").[1] Additional oversight of the USCP is conducted by committees in both the House of Representatives and the Senate.

Established by Congress in 2005, the USCP Inspector General (IG) and Office of Inspector General (OIG) work to promote economy, efficiency, and effectiveness in the administration of USCP programs and operations; and to prevent and detect fraud, waste, abuse, and mismanagement in USCP programs and operations.  *See* attached Declaration of Michael Bolton

---

[1] Since 2003, the Chief of the Capitol Police has served on the Board in an *ex officio*, non-voting capacity.  *See* Pub. L. No. 108-7, div. H, § 1014(a)(2), 117 Stat. 11 (2003).

(Bolton Decl.); *see* 2 U.S.C. § 1909; Pub. L. No. 109-55, tit. I, § 1004, 119 Stat. 565 (2005).  The IG is appointed and supervised by the Capitol Police Board.  2 U.S.C. § 1909(b)(1).  Among other things, Congress generally authorized the IG to exercise the same authority as an inspector general does under the Inspector General Act of 1978 (IG Act), 5 U.S.C. App., authorized the IG to investigate complaints of mismanagement or abuses of authority by the USCP, and required the IG to submit semiannual reports of his office's activities to Congress.  *See* 2 U.S.C. §§ 1909(c), (d)(1).

## II.    PLAINTIFFS' REQUEST AND THIS LITIGATION

On January 28, 2021, Plaintiff Leopold sent letters to the OIG and to USCP requesting all OIG reports since 2008,[2] all USCP semiannual disbursement reports since 2015, all USCP directives in effect on January 6, 2021, and all permits or denials of permits for public gatherings on the Capitol Grounds for January 6, 2021.  *See* attached Declaration of James W. Joyce ¶ 3 (Joyce Decl.) & Ex. B; Bolton Decl. ¶ 3.  After receiving a response from the USCP dated February 11, 2021, Plaintiff Leopold sent a request for USCP disbursement reports to the House Legislative Resource Center.  Joyce Decl. ¶ 4.

Dissatisfied with the responses they received, and correctly recognizing that USCP, part of the Legislative Branch, is not subject to the Freedom of Information Act, Plaintiffs filed what they styled a "Petition for a Writ of Mandamus" on February 23, 2021, naming as putative Respondents the then-Acting Chief of the U.S Capitol Police and the Inspector General of the U.S. Capitol Police.  ECF No. 1.

On April 26, 2021, Defendants moved to dismiss the Petition, arguing that Plaintiffs had

---

[2] Plaintiffs requested three categories of OIG documents, but because their second requested category—all Inspector General reports from 2008 forward—subsumes the other two categories of requested reports, Defendants have treated the request as one for all OIG reports from 2008 forward, including semiannual reports from 2015 forward.  Bolton Decl. ¶ 3.

not properly commenced a civil action because they had failed to file a Complaint.  ECF No. 10.
Plaintiffs responded by filing a Complaint (which they styled a "First Amended Complaint" even
though no original Complaint had been filed).  Compl., ECF No. 12.  Plaintiffs assert three counts,
one based on an asserted common law right of access to public records, and two based on claimed
statutory entitlements to certain OIG reports.  *Id.* ¶¶ 8-17.  In light of Plaintiffs' filing of a
Complaint, the Court denied Defendants' motion to dismiss as moot.  *See* Minute Order (June 1,
2021).  On May 24, 2021, Defendants timely answered the Complaint.  ECF No. 15.

Since this action was filed, Defendants have produced a substantial number of documents
in response to Plaintiffs' requests, and the parties have thus narrowed the issues for this Court to
resolve.  On April 27, 2021, the Office of the Clerk of the House of Representatives produced all
requested USCP disbursement reports to Plaintiffs.  Joyce Decl. ¶ 5.  On August 17, 2021, the
USCP produced, with limited redactions for personal privacy, all documents responsive to
Plaintiffs' request for permits or denials of permits for public gatherings on the Capitol Grounds
on January 6, 2021.  *Id.* ¶ 6.  Also on August 17 and September 16, the USCP provided to
Plaintiffs' counsel a list of the written directives in effect on January 6, 2021 that have been
determined not to be "security information," as defined by Congress in 2 U.S.C. § 1979.  *Id.* ¶ 8.
Of these directives determined not to be security information, Plaintiffs have narrowed down to
36 those to which they still seek access; Plaintiffs also challenge the non-disclosure of the 65
directives which have been determined to be security information.  Id. ¶¶ 8-9.  The documents
which remain at issue for summary judgment purposes are thus OIG reports from 2008 forward
(including semiannual reports from 2015 forward), and 101 USCP written directives.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment." *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 112 (D.D.C. 2003).  Rather, the dispute must concern a question of fact that is material, meaning that it is "capable of affecting the substantive outcome of the litigation." *Id.*  The dispute must also be genuine, meaning that it is "supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party." *Id.*

**ARGUMENT**

Summary judgment should be entered in Defendants' favor.  As a threshold matter, Plaintiffs have not identified a waiver of sovereign immunity, and the Court therefore lacks jurisdiction.  Even if sovereign immunity did not bar this suit, Plaintiffs' claims fails on the merits. First, Plaintiffs misread the provisions of the IG Act they rely upon for a claimed statutory entitlement to disclosure of OIG reports; those provisions do not compel the USCP IG to provide Plaintiffs with the requested reports.  Second, OIG information and a significant fraction of the USCP's written directives are prohibited from disclosure because they are protected by statute as security information, and the Capitol Police Board has not authorized their release.  Third, and in any event, none of the materials Plaintiffs have sought are "public records" cognizable under the common law right of access.

**I.      SOVEREIGN IMMUNITY BARS THIS ACTION.**

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota*, 461 U.S. 273, 287 (1983); *see*

*also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). That immunity "extends to the United States Congress when it is sued as a branch of the government," *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), *abrogated on other grounds*, *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020), and encompasses agencies within the Legislative Branch, *see Cofield v. United States*, 64 F. Supp. 3d 206, 213-14 (D.D.C. 2014) ("[S]overeign immunity bars any claim for money damages against the United States (including the U.S. Senate) and its agencies.").

Accordingly, to proceed with this suit, Plaintiffs must identify a waiver of sovereign immunity that is "unequivocally expressed in statutory text." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (a waiver of sovereign immunity "will not be implied"). Yet Plaintiffs have identified no such unequivocal waiver that would permit this action. Nor can Plaintiffs rely on their conclusory claim to mandamus jurisdiction under 28 U.S.C. § 1361, *see* Compl. ¶ 7. "It is well settled that [section 1361] does not by itself waive sovereign immunity." *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996) (*WLF II*).

Plaintiffs may also assert that the *Larson-Dugan* exception to sovereign immunity applies here. "Under this exception, 'suits for specific relief against officers of the sovereign' allegedly acting 'beyond statutory authority or unconstitutionally' are not barred by sovereign immunity." *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (quoting *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689 (1949)); *see also Dugan v. Rank*, 372 U.S. 609, 621-22 (1963). But Plaintiffs have not identified any "officer of the sovereign" who they allege is exceeding his or her statutory or constitutional authority. Rather, the Complaint alleges a failure to act under supposed statutory duties in Counts II and III, and in Count I that Defendants have violated a common law right of access to the requested records—not that they have exceeded their

statutory or constitutional powers.  Moreover, insofar as Plaintiffs would rely on the mandamus statute, 28 U.S.C. § 1361, to overcome sovereign immunity, *see* Compl. ¶ 7, that statute "is only a source of jurisdiction for district courts to exercise writs of mandamus to employees of the *Executive* branch," *United States v. Choi*, 818 F. Supp. 2d 79, 84 (D.D.C. 2011), and is insufficient to maintain a suit against the Legislative Branch officers who are Defendants in this case.  Because sovereign immunity bars this suit, Defendants are entitled to summary judgment due to a lack of subject matter jurisdiction.

## II.    PLAINTIFFS' CLAIMS LACK MERIT.

Even if the Court concludes that it does have jurisdiction to hear this action, or that the sovereign immunity inquiry merges with the merits, Defendants are entitled to summary judgment on the merits.  With respect to the OIG materials Plaintiffs have requested, Plaintiffs are mistaken in their claims that provisions of the IG Act compel disclosure of certain reports and recommendations.  And in any event, the Capitol Police Board has expressly prohibited the public disclosure of *all* OIG information—thus encompassing the materials requested by Plaintiffs here—pursuant to its authority under 2 U.S.C. § 1979 to control sensitive security information of the Capitol Police.  Even if Plaintiffs could overcome these threshold deficiencies in their claimed right of access to the OIG materials, the requested documents are not "public records" to which their asserted common law right applies.

As for the non-OIG materials Plaintiffs have requested, only one category remains in dispute—101 internal written USCP directives that were in effect on January 6, 2021.  But those directives are not public records to which Plaintiffs have any right of access, and many of them are security information whose release is prohibited by statute.

A. **The Inspector General Act of 1978 does not compel OIG to release the requested reports.**

Plaintiffs advance two claims—Counts II and III of their Complaint—that provisions of the IG Act mandate public disclosure by the USCP Inspector General of some of the documents they have requested. Plaintiffs' understanding of the cited IG Act provisions is incorrect and their claims fail.

1. *2 U.S.C. § 1909(c)(2) does not require OIG to make its semiannual reports available to the public.*

When Congress created the USCP Inspector General position in 2005, it did not, as Plaintiffs seem to assume, apply the IG Act in full to the Inspector General. Rather, Congress identified certain provisions of the existing IG Act that would apply to the newly-created USCP IG, while crafting other, new and different provisions unique to the USCP IG. One of those latter provisions is 2 U.S.C. § 1909(c)(2), which Plaintiffs in Count II claim has been violated. *See* Compl. ¶¶ 9-11. Section 1909(c)(2) provides:

> The Inspector General shall prepare and submit semiannual reports summarizing the activities of the Office in the same manner, and in accordance with the same deadlines, terms, and conditions, as an Inspector General of an establishment under section 5 (other than subsection (a)(13) thereof) of the Inspector General Act of 1978, (5 U.S.C. App. 5). For purposes of applying section 5 of such Act to the Inspector General, the Chief of the Capitol Police shall be considered the head of the establishment. The Chief shall, within 30 days of receipt of a report, report to the Capitol Police Board, the Committee on House Administration, the Senate Committee on Rules and Administration, and the Committees on Appropriations of the House of Representatives and of the Senate consistent with section 5(b) of such Act.

The first sentence of this provision requires the USCP IG to prepare and submit semiannual reports (SARs) consistent with how IGs of "establishments," as defined in the IG Act, prepare their own

SARs under section 5 of the IG Act.[3]  Section 5, in turn, prescribes the contents of a SAR.  The second sentence of § 1909(c)(2) is straightforward: the Capitol Police Chief is to be the "head of the establishment" for purposes of transmitting a SAR, *i.e.*, the Chief is the individual to whom the Inspector General submits each SAR.  *See* IG Act § 5(b) (requiring IGs to furnish SARs "to the head of the establishment involved not later than April 30 and October 31 of each year").  The third sentence of § 1909(c)(2) establishes, by reference to § 5(b) of the IG Act, a procedure for the Capitol Police Chief to report the information prescribed by § 5(b) to the Board and the four specified congressional committees.

In their Complaint, Plaintiffs quote the first sentence of § 1909(c)(2) and ignore the latter two sentences.  Compl. ¶ 9.  Plaintiffs then jump to cite § 5(c) of the IG Act—which requires a head of an establishment to whom a SAR has been submitted to make the SAR available to the public upon request—as if it applies to the USCP, the USCP OIG, or both.  *Id*. ¶ 10.  But there is no basis for this supposition.  Congress in § 1909(c)(2) was clear that it was imposing on the USCP IG the same duties for "prepar[ing] and submit[ting]" to the head of the establishment a SAR as those borne by an inspector general under § 5 of the IG Act.  Congress did not, however, in § 1909(c)(2) apply the public disclosure duty from section 5(c) of the IG Act to either the USCP IG, the Capitol Police Chief, or anyone else in the USCP.  Instead, Congress required the Chief only to timely report to the Board and the four specified congressional committees.  2 U.S.C. § 1909(c)(2).  Contrary to Plaintiffs' view then, Congress did not subject the Capitol Police Chief to the public disclosure requirement of § 5(c) of the IG Act.

---

[3] Subsection (a)(13) of section 5 of the IG Act refers to "the information described under section 804(b) of the Federal Financial Management Improvement Act of 1996," IG Act § 5(a)(13), which in turn obligates inspectors general to report to Congress whenever an agency has not met target dates specified in a remediation plan to correct an agency's financial management system found to be deficient.  *See* Pub. L. No. 104-208, div. A, title I, § 101(f) [title VIII] (1996), 110 Stat. 3009-314, 3009-389, *codified as a note to* 31 U.S.C. § 3512.

There is thus no basis to impose on a Capitol Police official—whether the IG or the Chief— the duty to publicly disclose SARs that Congress in the IG Act imposed only on heads of other government agencies.  Defendants are entitled to summary judgment on Count II.

        2.        *2 U.S.C. § 1909(c)(1) does not require OIG to post recommendations or reports to its website.*

Plaintiffs are also wrong in claiming in Count III that by virtue of 2 U.S.C. § 1909(c)(1), two provisions of the IG Act—section 4(e)(1) and § 8M(b)(1)(A)—obligate the USCP Inspector General to post any recommendations for corrective action and audit reports, inspection reports, and evaluation reports to its website.  This claim appears to track Plaintiffs' request for all OIG reports since 2008 insofar as those reports include recommendations for corrective action or are audit, inspection, or evaluation reports.  Compl. ¶ 4.

In 2005, Congress enacted § 1909(c)(1), which provides that the USCP Inspector General "shall carry out the same duties and responsibilities with respect to the United States Capitol Police as an Inspector General of an establishment carries out with respect to an establishment under section 4 of the [IG Act], under the same terms and conditions which apply under such section." 2 U.S.C. § 1909(c)(1)  Plaintiffs then point to § 4(e)(1) of the IG Act to argue that the USCP IG must, within three days of making any recommendation for corrective action, "post the document making a recommendation for corrective action on the website of the Office of Inspector General." Compl. ¶ 13; *see* IG Act § 4(e)(1).  It was not, however, until 2016 that Congress added § 4(e)(1) to the IG Act—some eleven years after Congress enacted § 1909(c)(1).  *See* Inspector General Empowerment Act of 2016, Pub. L. No. 114-317, § 4(d) (adding subsection (e)(1) to § 4 of the IG Act), 130 Stat. 1595, 1602 (2016).  As the Supreme Court has explained, according to the reference canon, "a statute that refers to another statute by specific title or section number in effect cuts and pastes the referenced statute as it existed when the referring statute was enacted, without any

subsequent amendments." *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 769 (2019).  Because the public

posting requirement did not exist when Congress in § 1909(c)(1) applied § 4 of the IG Act to the

USCP IG, the USCP IG has no such duty.

Plaintiffs' assertion that § 8M(b)(1)(A) of the IG Act obligates the USCP IG to post audit

reports, inspection reports, and evaluation reports to its website fares no better.  Compl. ¶ 15.  As

Plaintiffs' own pleading acknowledges, section 8M(b)(1)(A) creates a posting requirement only

for the inspector general of a "Federal agency" or a "designated Federal entity."  *Id.*  But the USCP

is neither of those two defined terms.  A "designated Federal entity" is one of the entities specified

by Congress in § 8G(a)(2) of the IG Act, none of which is the Capitol Police.  *See* IG Act § 8M(c)

(giving "designated Federal entity" in § 8M the same meaning it is given in § 8G(a)).  And a

"Federal agency" is defined in § 12(5) of the IG Act by reference to 5 U.S.C. § 552(f)'s definition

of an "agency," which, in turn, does not include the Capitol Police (or any Legislative Branch

entity).  *See* 5 U.S.C. § 552(f)(1) ("agency" includes "any executive department, military

department, Government corporation, Government controlled corporation, or other establishment

in the executive branch of the Government (including the Executive Office of the President), or

any independent regulatory agency"); *see also* 5 U.S.C. § 551(1)(A).  Defendants are entitled to

summary judgment on Count III.

### B.   Plaintiffs have no common law right of access to the requested OIG reports and many of the USCP directives because 2 U.S.C. § 1979 prohibits their public disclosure.

Plaintiffs' claim of a common law right of access to the requested OIG reports and many

of the USCP written directives—Count I of the Complaint—fails because Congress has enacted a

statute that "sp[eaks] directly to the issue at hand" by prohibiting disclosure.  *Ctr. for Nat'l Sec.*

*Studies v. DOJ*, 331 F.3d 918, 937 (D.C. Cir. 2003).  The D.C. Circuit has explained that when a

statute requires a government entity to keep certain documents confidential or otherwise limit their

release, the common law right of access is superseded.  *See Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 669 (D.C. Cir. 2017); *see also, e.g.*, *City of Milwaukee v. Illinois,* 451 U.S. 304, 313-14 (1981) ("[F]ederal common law . . . is resorted to [only] in absence of an applicable Act of Congress." (internal citations, quotation marks, and alteration marks omitted)); *In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 405 (2d Cir. 2009) (applicable statutory provision "supersedes any arguable common law right")

> *1.* <u>*The Capitol Police Board has prohibited the disclosure of the OIG reports under 2 U.S.C. § 1979.*</u>

In 2 U.S.C. § 1979, Congress prohibited the release of any "security information" in the possession of the Capitol Police absent the express approval of the Capitol Police Board.  Congress defined "security information" broadly as any information that:

> (1) is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds; and
> (2) is obtained by, on behalf of, or concerning the Capitol Police Board, the Capitol Police, or any incident command relating to emergency response.

2 U.S.C. § 1979(a).  Section 1979(b) then provides that security information may be released "only if the Capitol Police Board determines in consultation with other appropriate law enforcement officials, experts in security preparedness, and appropriate committees of Congress, that the release of the security information will not compromise the security and safety of the Capitol buildings and grounds or any individual whose protection and safety is under the jurisdiction of the Capitol Police."  2 U.S.C. § 1979(b).  Congress further authorized the Capitol Police Board to promulgate regulations to carry out § 1979.

In December 2017, the Board exercised its authority under § 1979 with respect to OIG

information.  Citing both its supervisory authority of the IG and its authority under § 1979 to determine the release of security information, the Board issued Capitol Police Board Order 17.16, *Office of Inspector General Information* (the 2017 Order).  *See* Bolton Decl. ¶ 8 & Ex. A.  The 2017 Order provides that "Office of Inspector General information"—including "audit reports" and "investigations reports"—shall not be posted to internal or external websites or distributed outside the United States Capitol Police or Capitol Police Board.  Bolton Decl., Ex. A.  The 2017 Order notes that "the Office of Inspector General obtains and secures national security and law enforcement sensitive information," and due to that fact, requires that all OIG information is to be considered and designated as law enforcement sensitive and/or deliberative process material subject to applicable statutory restrictions and privileges.  *Id*.  The order further prohibits any secondary distribution of OIG information—*i.e.,* distribution beyond the USCP—"without prior authorization of the Capitol Police Board and the Inspector General consistent with applicable law, regulation, and policy."  *Id.*

As Inspector General Bolton explains in his declaration, OIG, consistent with the 2017 Order, does not disclose any OIG information outside the USCP or the Board unless specifically authorized to do so by the Board.  Bolton Decl. ¶ 9.  All OIG information, including the numerous reports requested by Plaintiffs, is thus treated as "security information" as set forth in 2 U.S.C. § 1979, and cannot be disclosed to the public without Board authorization.[4]  There has been no

---

[4] It bears noting that certain OIG information has been released to the public—for example, the Committee on House Administration has posted on its website an executive summary of an OIG flash report regarding the events of January 6, 2021.  *See* Bolton Decl. ¶ 9; Committee on House Administration, Oversight Of The United States Capitol Police And Preparations For And Response To The Attack of January 6th, *available at* https://cha.house.gov/committee-activity/hearings/oversight-united-states-capitol-police-and-preparations-and-response.
However, disclosures to the Senate and the House are expressly exempted from the prohibitions of 2 U.S.C. § 1979.  *See* 2 U.S.C. § 1979(c).  And, once a document is provided to a congressional committee, whether it is further disseminated to the public is beyond the USCP's or OIG's control.

such Board authorization to disclose any of the requested reports.  Bolton Decl. ¶ 10.  They cannot,
therefore, be released, and Plaintiffs' claim of access to the requested OIG reports under the
common law fails.

 2. *A significant fraction of the written directives in effect on January 6, 2021
 are security information whose disclosure is prohibited.*

The same disclosure prohibition applies to Plaintiffs' claim of access to USCP's written
directives in effect on January 6, 2021, insofar as a portion of those directives are security
information.  Of the 101 directives at issue in the litigation, 65 of them have been determined by
a USCP document review team to be security information under § 1979.  Joyce Decl. ¶ 9.  A list
of these 65 directives, as well as those 36 that are not security information, is further attached as
Exhibit C to the Joyce Declaration and indicates the subject matter of the directives.  *Id.* ¶ 10 &
Ex. C.  In light of the statutory prohibition contained in § 1979, these 65 directives cannot be
disclosed absent express approval by the Capitol Police Board, which has not occurred.  *Id.* ¶ 9.
Defendants are entitled to summary judgment with respect to those 65 USCP written directives
determined to be security information.

**C. The requested OIG reports and USCP written directives are not "public
records" to which the common law right of access applies.**

Plaintiffs' claim of a common law right of access to the requested OIG reports and 101
USCP written directives (Count I of the Complaint) fails because those documents are not "public
records."  If a document is not a "public record," the common law right of access does not extend
to it.  *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1451 (D.C. Cir. 1994) (*WLF
I*); *Schwartz v. DOJ*, 435 F. Supp. 1203, 1204 (D.D.C. 1977) ("[T]he common law rule applies
only to 'public records.'").

 1. *The requested OIG reports are not public records.*

In *Washington Legal Foundation II*, the D.C. Circuit rejected a sweeping definition of

"public records" that would have "include[d] almost every document recorded, generated, or produced by public officials whether or not required by law to be made, maintained or kept on file." *WLF II*, 89 F.3d at 904 (quoting *Higg-A-Rella, Inc. v. Cty. of Essex*, 660 A.2d 1163, 1168 (1995) (quotation marks omitted)).   Instead, the court adopted a narrower definition: "a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." *Id.* at 905.  The D.C. Circuit specifically carved out "documents that are preliminary, advisory, or, for one reason or another, do not eventuate in any official action or decision being taken." *Id.*  Thus, a "public record" does not "encompass the preliminary materials upon which an official relied in making a decision or other writings incidental to the decision itself." *Id.*

The requested OIG reports are not "public records" because they do not memorialize or record any official action by the USCP, and instead contain, at most, recommendations to USCP leadership for such official action.  Bolton Decl. ¶ 11.  For example, an OIG report may include findings that the USCP has implemented a particular program without universal compliance with particular program requirements, and go on to recommend that the USCP enforce those program requirements more comprehensively in the future.  *Id.* ¶ 7.  A report could also contain sensitive findings and recommendations regarding, for example, posting locations for USCP officers and personnel to improve the security and safety of the Capitol and congressional members.  *Id.*  Or, with respect to OIG's audits of the USCP's financial statements, OIG could, for example, recommend that stronger internal controls are warranted, for example, with respect to time and attendance verification for payroll purposes.  *Id.*  As Inspector General Bolton explains, however, OIG is not empowered to take any official action for the Capitol Police, to implement its own recommendations, or otherwise to correct USCP performance areas it views as deficient.  *Id.* ¶ 12. Instead, those decisions are left to USCP leadership and the Capitol Police Board, *id.*, and, if they

choose to get involved on a particular issue, congressional oversight committees.

Although the *WLF II* court said in dicta that an advisory group's recommendations to the U.S. Sentencing Commission were "official action," 89 F.3d at 906, that same conclusion is not warranted here.  The sentencing guidelines recommended by the advisory group to the Sentencing Commission, which had been made public as part of the advisory group's final report after the public was provided an opportunity to comment on a draft, were not at issue in *WLF II*.  *Id*. at 899, 906.  Rather, the plaintiff was seeking disclosure of the internal documents and memoranda used by the advisory group in formulating its recommended sentencing guidelines.  *Id*. at 899.  The court held that those materials, which it characterized as "if not preliminary, then merely incidental to the only official action the Advisory Group was authorized to take, *viz*., recommending sentencing guidelines to the Commission," were not public records.  *Id*. at 906.

The recommended sentencing guidelines to which the court referred in *WLF II* are fundamentally different from the types of recommendations made by the USCP OIG in its reports. Not only is there no similar process for providing drafts of OIG's reports to the public for comment, Congress did not require the USCP OIG to make its final reports public, as discussed above.  *See* Section II.A, *supra*.  Even if preparing semiannual reports containing recommendations is considered an official action by OIG, Congress defined the outer bound of that official action to be the IG's submission of those reports to the Capitol Police Chief (who then reports to Congress and the Board), and did not direct the IG to provide those reports to the public.  This distinction from *WLF II* is unsurprising, given that the advisory group's mission necessarily involved creation of proposed sentencing law applicable to the public—unlike the USCP IG, who generally makes recommendations concerning internal business of the Capitol Police.  Further, the advisory group in *WLF II* was formed for "a very limited mission," that contemplated one and only one "official action"—recommending sentencing guidelines.  89 F.3d at 906.

16

Indeed, cases applying *WLF II* show that the OIG reports are not records to which the public has a common law right of access. In *Pentagen Technologies International v. Committee on Appropriations*, the plaintiffs asserted a common law right of access and sought from the House Committee on Appropriations a series of investigative reports prepared by committee staff which evaluated a Defense Department program. 20 F. Supp. 2d 41, 43 (D.D.C. 1998). This Court rejected Plaintiffs' claim, concluding that such "investigative" reports were "preliminary materials" for the Subcommittee's consideration, and that they "d[id] not fall within the definition of 'public records' employed by this Circuit." *Id.* at 45. Similarly, the court in *United States v. Sater* noted that a presentence report prepared by federal probation services for a district court is not a document to which the common law right of access applies. *See* 2019 WL 3288389, at *2 n.3 (E.D.N.Y. July 22, 2019). The *Sater* court acknowledged that a presentence report is "relevant to the performance of the judicial function and useful in the judicial process"—just as are OIG's reports for the USCP—but nonetheless concluded that such attributes are insufficient to convert "an internal court document" into a record to which the public enjoys unfettered access. *Id.*

Just as in *Pentagen Technologies* and *Sater*, the OIG materials requested here are preliminary reports and recommendations issued to USCP leadership, the Capitol Police Board, and Congress for their consideration. The OIG reports that Plaintiffs have requested are a quintessential example of the type of "preliminary" or "advisory" materials upon which a USCP official, or the Board, or Congress, may rely in making (or declining to make) an official decision for the Department. *WLF II*, 89 F.3d at 905. They are therefore not public records and there is no "necessity for judicial application of the second-step balancing test." *Id.*

    2.  *The USCP's internal written directives are not public records.*

Similarly, none of the 101 written directives at issue is a "public record" within the scope of the D.C. Circuit's definition of that term. As can be discerned from their titles listed in Exhibit

C to the Joyce Declaration, the 101 written directives are internal memoranda that establish rules, protocols, and guidance for USCP officers and employees on a variety of topics, such as Capitol security, traffic enforcement, law enforcement training, interacting with Congress, and workplace rules and benefits, among many other areas that pertain to USCP business.  Joyce Decl. ¶¶ 10-11 & Ex. C.  None of these directives is "a written memorial [] created and kept for the purpose of preserving a precise record of an official decision or action."  *WLF II*, 89 F.3d at 905.  Instead, any given USCP directive provides instruction or guidance to a USCP employee on how take official action or to reach an official decision—USCP directives are "the preliminary materials upon which an official relie[s] in making a decision or other writings incidental to the decision itself."  *Id.*; Joyce Decl. ¶ 11.

These directives are moreover just the sort of "administrative matters internal to the [USCP]" that have previously been held by the D.C. Circuit not to be public records.  *WLF II*, 89 F.3d at 900; Joyce Decl. ¶ 11. Plaintiffs can point to nothing showing that these internal directives were specifically created for the purpose of memorializing any official USCP action.  Nor can Plaintiffs show that a law enforcement agency's internal directives are the sort of material to which the public enjoys unfettered access.  *Cf.* 5 U.S.C. § 552(b)(2) (FOIA provision exempting from disclosure agency records "related solely to the internal personnel rules and practices of an agency").  Because the USCP's internal directives in effect on January 6, 2021 are not public records, Defendants are entitled to summary judgment with respect to this claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.


Dated:  September 30, 2021                    Respectfully submitted,

                                              BRIAN M. BOYNTON

18

Acting Assistant Attorney General

JOHN R. GRIFFITHS
Director
Federal Programs Branch

MARCIA BERMAN
Assistant Director
Federal Programs Branch

*/s/ M. Andrew Zee*
M. ANDREW ZEE (CA Bar No. 272510)
Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6646
Fax: (415) 436-6632
E-mail: m.andrew.zee@usdoj.gov

*Counsel for Defendants*

19