UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD; BUZZFEED, INC.,

    Plaintiffs,

  v.

J. THOMAS MANGER, in his official capacity as Chief, U.S. Capitol Police; MICHAEL BOLTON, in his official capacity as Inspector General of the U.S. Capitol Police,

    Defendants.

Case No. 1:21-cv-00465-BAH

**DECLARATION OF MICHAEL BOLTON**

I, Michael Bolton, declare as follows:

1. I am the Inspector General (IG) for the U.S. Capitol Police (USCP or Department), a position I have held since January 20, 2019. From March 2018 to January 2019, I served as the Acting Inspector General, and from August 2006 to March 2018 as the Assistant Inspector General for Investigations. As Inspector General, I head the Department's Office of Inspector General (OIG), which supervises and conducts audits, inspections, and investigations involving USCP programs, functions, systems, and operations.

2. OIG's objectives include promoting economy, efficiency, and effectiveness in the administration of USCP programs and operations; preventing and detecting fraud, waste, abuse, and mismanagement in USCP programs and operations; preventing, detecting, and handling cases involving misconduct; and issuing Semiannual Reports to Congress that describe OIG activities. As Inspector General, I report directly to the Capitol Police Board, which, along with Congress, has oversight responsibility for the Department.

3. On or around January 28, 2021, OIG received from Jason Leopold of Buzzfeed News, both Plaintiffs in this case, a request for certain OIG documents under an asserted common

1

law right of access to public records.  A copy of that request can be found at ECF No. 1-1, Exhibit 1.  Plaintiffs requested three categories of OIG documents, as follows:

- Inspector General semiannual reports for the period of 2015 forward.

- Inspector General reports, including audits, for the period 2008 forward.

- Annual financial statements and audits of annual financial statements for the period of 2015 forward.

Plaintiff also requested three categories of non-OIG information from the USCP.  This request is the subject of the instant litigation, *Buzzfeed, Inc. v. Manger*, No. 21-cv-00465 (D.D.C.).  This Declaration addresses only the categories of requested OIG documents.

4. Because the second requested category is for all Inspector General "reports," and because such reports include "semiannual reports" (first requested category) and "audits of financial statements" (third requested category), Plaintiffs' second requested category subsumes the other two categories.  OIG has thus interpreted Plaintiffs' request as one for all reports for the period 2008 forward.  OIG has declined to provide any of the materials in response to Plaintiffs' request and, indeed, is prohibited from doing so by statute and order of the Capitol Police Board, as discussed below.  This Declaration provides information in support of OIG's determination not to provide any of the requested information.

5. In 2005, Congress directed the establishment of the Office of the Inspector General and the appointment of an Inspector General for the Department, and in 2006 the first IG was sworn in.  I am the third individual to occupy the Inspector General position.  The IG is responsible for conducting and supervising audits and investigations of the Department. OIG examines, evaluates and, where necessary, critiques programs and operations, and makes recommendations for ways to carry out USCP responsibilities in the most effective, efficient, and economical manner possible.

6. In general, OIG conducts audits and investigations based on several different criteria. OIG exercises discretion and can affirmatively select particular programs or activities to audit or investigate; for example, if a program or activity is newly instituted or has not recently been the subject of an OIG audit or investigation. OIG also conducts audits or investigations when specific subjects are requested by Congress, the Chief of the Capitol Police, or the Capitol Police Board. Finally, OIG maintains a hotline for any member of the public or any USCP employee to submit a complaint; OIG will typically investigate any non-frivolous complaint that it receives through this hotline.

7. OIG issues several types of reports. First, when OIG conducts an audit or investigation, it typically produces a report at the conclusion of that audit or investigation. Second, as required by statute, OIG produces a semi-annual report summarizing the work OIG initiated and completed during the preceding six-month period. The semi-annual reports, or SARs, are provided by OIG to the Chief of the Capitol Police, who is then responsible for providing the SARs to the committees of Congress specified by statute. The contents of each SAR are prescribed by section 5(a) of the Inspector General Act of 1978. Third, OIG compiles on an annual basis a financial audit report on the USCP's annual financial statements. Because each SAR is required to include summaries of all work OIG conducted during the preceding six-month period, all categories of reports, whether resulting from audits, investigations, or financial audits, are included in the SAR. An OIG report might include a finding that the USCP, in implementing a particular program, has not complied with all program requirements, and recommend comprehensive compliance in the future. A report could also include, for example, findings and recommendations regarding sensitive posting locations for USCP officers and personnel in the Capitol building and on Capitol Grounds in order to improve the security and safety of the Capitol and USCP protectees. Finally, an audit of OIG's financial statements could recommend stronger internal controls in specified areas, for example, for payroll verification purposes.

8. By Order dated December 12, 2017 (the "2017 Order"), the Capitol Police Board, acting under its statutory authority to determine the release of security information, *see* 2 U.S.C.

§ 1979, prohibited the distribution of *all* Office of Inspector General information, to include audit reports, investigations reports, analyses, review, evaluations, and annual work plans, beyond the USCP or the Capitol Police Board.  That order is entitled Capitol Police Board Order 17.16, *Office of Inspector General Information* (Dec. 12, 2017), and a true and correct copy is attached to this Declaration as Exhibit A.  In addition, the Board, citing the "national security and law enforcement sensitive information" that is "obtain[ed] and secure[d]" by OIG, stated that *all* OIG information was to be "considered and conspicuously designated as law enforcement sensitive and/or deliberative process material subject to applicable statutory restrictions and privileges."  *Id.*  Finally, the Board ordered that secondary distribution—that is, distribution beyond those permitted to obtain it—of any OIG information was prohibited absent prior authorization of the Board and the Inspector General.  *Id.*  The effect of this 2017 Order is to prohibit the release of any OIG information unless that release is specifically authorized by the Capitol Police Board.

9.  Consistent with its terms, OIG implements the 2017 Order by not disclosing any OIG information outside the USCP or the Board unless that disclosure is specifically authorized by the Board.  As a result of the 2017 Order, all OIG information is treated as "security information" as defined by statute, *see* 2 U.S.C. § 1979(a).  For example, when OIG finalizes a report, it conspicuously marks that report as restricted distribution.  OIG will distribute a report to the Capitol Police Chief, the Capitol Police Board, and the USCP's congressional oversight committees (or, if a SAR, to the Chief alone), but makes no further distribution.  Any further distribution of a report requires the specific approval of the Capitol Police Board.  OIG applies this non-disclosure rule to all OIG information, including information that was generated prior to the issuance of the 2017 Order.  (There is an exception to this non-disclosure rule, recognized in 2 U.S.C. § 1979(c), in the event that Congress, typically acting through one of the USCP's oversight committees, requests OIG information; in the event of such a request, Capitol Police Board approval is not required.)

10.  With respect to the OIG reports requested by Plaintiffs in this litigation, the Board has not authorized their public disclosure, and those reports therefore cannot be released.

4

11. While the 2017 Order independently prohibits release of the requested OIG information to Plaintiffs, the requested materials are in any event not "public records" to which a common law right of access would apply. OIG reports are not created or kept to memorialize or record any official action by the USCP, nor are they maintained or kept for that purpose. Rather, OIG reports contain findings regarding USCP programs and operations and, if warranted, recommendations to the USCP leadership and the Capitol Police Board for areas of improvement in those programs and operations. OIG reports do not, in and of themselves, result in or compel any action by the Department.

12. In specifying what is to be included in every SAR, for example, the portions of the Inspector General Act applicable to OIG—sections 5(a)(2) and 5(a)(3)—provide only that OIG is to describe recommendations for corrective action, and to identify prior recommendations for corrective action that have not been completed. OIG lacks authority to implement its own recommendations or otherwise to correct performance areas that it may find deficient or otherwise problematic. The authority to take such action, and any official action on behalf of the Capitol Police, instead resides in the Chief of the Capitol Police and the Capitol Police Board.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 30th day of September, at Washington, D.C.

_____

Michael Bolton