# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD; BUZZFEED, INC.,

        Plaintiffs,

  v.

J. THOMAS MANGER, in his official capacity
as Chief, U.S. Capitol Police; MICHAEL
BOLTON, in his official capacity as Inspector
General of the U.S. Capitol Police,

        Defendants.

Case No. 1:21-cv-00465-BAH

# COMBINED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.  SOVEREIGN IMMUNITY BARS THIS ACTION ............................................... 2

II.  PLAINTIFFS' CLAIMS LACK MERIT ................................................................ 6

    A.  Plaintiff has no common law right to access the Capitol Police Directives. ............... 7

        1.  Sixty-five of the Capitol Police written directives are prohibited
from disclosure by statute because they are "security information" .......... 7

        2.  The written directives are not "public records" .......................................... 9

    B.  Plaintiff has no right to the OIG reports under either the common law or
federal statute ..................................................................................................... 13

        1.  The Capitol Police Board Order plainly prohibits disclosure of the
requested OIG semiannual reports, reports, and audits ........................... 13

        2.  OIG's semiannual reports, audits, and reports are not "public
records" ................................................................................................... 16

        3.  Plaintiffs lack any statutory right to OIG audits and reports
recommending corrective action .............................................................. 20

CONCLUSION .............................................................................................................. 22

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alabama Rural Fire Ins. Co. v. Naylor*,
　530 F.2d 1221 (5th Cir. 1976) ................................................................. 3

*Allen v. CIA,*
　636 F.2d 1287 (D.C. Cir. 1980) ............................................................... 7

*Amos v. Gunn*,
　94 Sp. 615 (1922) ................................................................................... 18

*Clark v. Library of Congress*,
　750 F.2d 89 (D.C. Cir. 1984) ................................................................... 4

*Cofield v. United States*,
　64 F. Supp. 3d 206 (D.D.C. 2014) ....................................................... 2, 3

*Ctr. for Nat'l Sec. Studies v. Dep't of Justice*,
　331 F.3d 918, 937 (D.C. Cir. 2003) ....................................................... 19

*Dugan v. Rank*,
　372 U.S. 609 (1963) ................................................................................. 3

*Jam v. Int'l Fin. Corp.*,
　139 S. Ct. 759 (2019) ......................................................................... 20, 21

*Judicial Watch v. Schiff, aff'd on other grounds* 998 F.3d 989 (D.C. Cir. 2021)
　474 F. Supp. 3d 305 (D.D.C. 2020) ......................................... 4, 5, 10, 12

*Lane v. Peña*,
　518 U.S. 187 (1996) ................................................................................. 3

*Larson v. Domestic & Foreign Comm. Corp.*,
　337 U.S. 682 (1949) ................................................................................. 3

*Leopold v. United States*,
　964 F.3d 1121 (D.C. Cir. 2020) ............................................................ 7, 8

*Liberation News Serv. v. Eastland*,
　426 F.2d 1379 (2d Cir.1970) ................................................................... 5

*Locke v. Warren*,
　--- F. Supp. 3d ---, No. 19-61056-CIV, 2020 WL 2763890 (S.D. Fla. 2020) ........................ 3, 4

*MetLife v. Fin'l Stability Oversight Council*,
  865 F.3d 661, 668-69 (D.C. Cir. 2017).................................................................. 11

*McLean v. United States*,
  566 F.3d 391 (4th Cir. 2009), *abrogated on other grounds, Lomax v. Ortiz-Marquez,* 140 S.
  Ct. 1721 (2020) ......................................................................................................... 2

*Parhat v. Gates*,
  532 F.3d 834 (D.C. Cir. 2008)................................................................................... 7

*Pentagen Technologies Int'l v. Comm. on Appropriations*,
  20 F. Supp. 2d 41 (D.D.C. 1998) ....................................................................... 17, 18

*Pollack v. Hogan*,
  703 F.3d 117 (D.C. Cir. 2012)................................................................................ 3, 4

*SEC v. Am. Int'l Group*,
  712 F.3d 1, 3 (D.C. Cir. 2013)................................................................................. 11

*Singh v. D.C.*,
  55 F. Supp. 3d 55 (D.D.C. 2014)........................................................................... 4, 19

*Swan v. Clinton*,
  100 F.3d 973 (D.C. Cir. 1996) ................................................................................. 4

*Trackwell v. United States Gov't*,
  472 F.3d 1242 (10th Cir. 2007) ............................................................................... 5

*Trea Senior Citizens League v. U.S. Dep't of State*,
  994 F. Supp. 2d 23 (D.D.C. 2013)........................................................................... 11

*United States v. Choi*,
  818 F. Supp. 2d 79 (D.D.C. 2011)............................................................................ 5

*United States v. El-Sayegh*,
  131 F.3d 158 (D.C. Cir. 1997)................................................................................. 10

*United States v. Gonzales*,
  52 U.S. 1 (1997)....................................................................................................... 21

*United States v. Ho*,
  984 F.3d 191 (2d Cir. 2020)..................................................................................... 21

*United States v. Hubbard*,
  650 F.2d 293 (D.C. Cir. 1980)................................................................................. 11

*Washington Legal Foundation v. U.S. Sentencing Commission*,
   89 F.3d 897 (D.C. Cir. 1996) ................................................................... *passim*

*Wilkins v. Jackson*,
   750 F. Supp. 2d 160 (D.D.C. 2010) ........................................................ 19

## Statutes

2 U.S.C. § 1909 ............................................................................................ *passim*

2 U.S.C. § 1979 ............................................................................................ *passim*

5 U.S.C. App. 3 § 4 ...................................................................................... *passim*

18 U.S.C. § 1956(c)(7)(D) ............................................................................ 21

28 U.S.C. § 1361 .......................................................................................... 5

44 U.S.C. § 3101 .......................................................................................... 18

Inspector General Empowerment Act,
   Pub. L. No. 114-317, 130 Stat 1595 (2016) ............................................ 21

## Other Authorities

United States Capitol Police, Audits,
   https://www.uscp.gov/the-department/office-inspector-general/audits-investigations ...... 13, 14

U.S. GAO, Government Auditing Standards (2018 Revision),
   https://www.gao.gov/assets/gao-21-368g.pdf ............................................ 14

## INTRODUCTION

Plaintiffs Buzzfeed and Jason Leopold's cross-motion for summary judgment and combined memorandum opposing Defendants' motion for summary judgment cannot rescue their common law right of access case. Pls.' Cross-Mot. for Summ. J. and in Opp'n to Defs.' Mot. for Summ. J., ECF No. 22 (Pls.' Mem.). Plaintiffs have provided no basis for this Court to order Defendants, the U.S. Capitol Police (USCP or Department) and its Inspector General, to disclose years of Inspector General reports and audits, along with over one hundred of the Department's internal written directives on policing operations. Summary judgment should be entered for Defendants for multiple reasons.

Initially, Plaintiffs concede that there is no unequivocal waiver of sovereign immunity that applies here, as is required for this Court's jurisdiction. And their reliance on the *Larson-Dugan* exception to sovereign immunity is misplaced when they have not asserted the type of statutory or constitutional claim that this exception permits.

Even if the Court entertains Plaintiffs' claims on the merits, Defendants are nonetheless entitled to summary judgment on all of them. First, Plaintiffs fail to respond to Defendants' arguments explaining why the statutory claim asserted in Count II of the Complaint—*i.e.*, that 2 U.S.C. § 1909(c)(2) obligates the Inspector General to make semiannual reports (SARs) publicly available—lacks merit. Plaintiffs have therefore conceded those arguments, and Defendants are entitled to summary judgment on Count II on that basis alone.

Second, with respect to the Capitol Police written directives, Plaintiffs offer no basis to refute the USCP's evidence that 65 of the 101 directives are "security information" which cannot be disclosed. *See* 2 U.S.C. § 1979. And, in any event, the directives are not "public records" under the D.C. Circuit's test in *Washington Legal Foundation v. U.S. Sentencing Commission*, 89 F.3d 897 (D.C. Cir. 1996) (*WLF II*), despite Plaintiffs' erroneous attempts to characterize them as such.

Third, with respect to the requested Office of Inspector General (OIG) materials, Plaintiffs cannot overcome the plain text of the Capitol Police Board's 2017 Order prohibiting disclosure of OIG information absent Board approval, which is indisputably lacking here.  The terms of the Order are clear that the requested semiannual reports, other reports, and audits cannot be disclosed. Moreover, like the directives, the OIG documents are not "public records" because the Inspector General has established that he lacks authority to take any official action on behalf of the USCP. No matter how much Plaintiffs characterize his authority otherwise, they cannot contravene that record evidence.  As for Plaintiffs' statutory claim that 2 U.S.C. § 1909(c)(1) obligates the Inspector General to post to the OIG website all reports and audits recommending corrective action, application of the reference canon confirms that Congress could not have imposed such a requirement when it set forth the duties and responsibilities of the Inspector General, some eleven years before that website posting duty was even created.

As a final note, after conferring, the parties have resolved any dispute over the USCP financial statements, so the Court need not consider those arguments.  *See* Pls.' Mem. 16-17 (Section III).

Defendants are entitled to summary judgment in this case, and Plaintiffs' cross-motion should be denied.

## I.    SOVEREIGN IMMUNITY BARS THIS ACTION

Plaintiffs do not dispute that sovereign immunity to suit "extends to the United States Congress when it is sued as a branch of the government," *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), *abrogated on other grounds*, *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020), and that that same immunity encompasses agencies within the Legislative Branch, *see Cofield v. United States*, 64 F. Supp. 3d 206, 213-14 (D.D.C. 2014) ("[S]overeign immunity bars any claim

for money damages against the United States (including the U.S. Senate) and its agencies.").

As Defendants anticipated, Plaintiffs cannot identify any waiver of sovereign immunity that is "unequivocally expressed in statutory text," *Lane v. Peña*, 518 U.S. 187, 192 (1996), and rely instead on the *Larson-Dugan* exception to sovereign immunity.   Pls.' Mem. 1-3.  "Under this exception, 'suits for specific relief against officers of the sovereign' allegedly acting 'beyond statutory authority or unconstitutionally' are not barred by sovereign immunity."   *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (quoting *Larson v. Domestic & Foreign Comm. Corp.,* 337 U.S. 682, 689 (1949)); *see also Dugan v. Rank*, 372 U.S. 609, 621-22 (1963). Plaintiffs, however, do not satisfy this exception to sovereign immunity.

Plaintiffs do not dispute that they have nowhere alleged official action "beyond statutory authority"—as opposed to a claimed failure to act under alleged statutory duties—and their claim to the *Larson-Dugan* exception should fail on that ground.  Even if a failure-to-act allegation is sufficient, however (and it should not be, as further explained below), Plaintiffs continue to maintain such a claim only in Count III.  Count I alleges that Defendants have not met a common law duty, and the Supreme Court explained in *Larson* itself that the exception does not apply to claims advanced under the common law.  *See* 337 U.S. at 692 (rejecting an immunity exception for a "third category of cases" in which a government officer's action is alleged to be "'illegal' as a matter of general law, whether or not it be within his delegated powers"); *see also Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976) ("In order to plead successfully that the acts of a government officer exceed his statutory authority a plaintiff must do more than simply allege that the actions of the officer are illegal or unauthorized."); *Locke v. Warren*, --- F. Supp. 3d ---, No. 19-61056-CIV, 2020 WL 2763890, at *3 (S.D. Fla. 2020) (explaining, in common law right of access case, how a plaintiff's "fail[ure] to identify even a single statute that would have directed [the defendant] to release the records he requested" would defeat a claim to meet the

3

*Larson-Dugan* exception).  And while Plaintiffs did in Count II allege that Defendants violated 2 U.S.C. § 1909(c)(2), *see* Compl. ¶¶ 9-11, they make no attempt to sustain that claim in response to the arguments in Defendants' motion for summary judgment on that claim.  The statutory claim in Count II is accordingly forfeited.  *See, e.g.*, *Singh v. D.C.*, 55 F. Supp. 3d 55, 66 (D.D.C. 2014) ("The rule in this circuit is clear that when a plaintiff fails to respond to an issue raised in a dispositive motion, the Court may treat that argument as conceded.").

That leaves only Plaintiffs' asserted statutory claim in Count III—that the Inspector General has not acted to make the website postings allegedly required by 2 U.S.C. § 1909(c)(1). *See* Compl. ¶¶ 12-17.  As noted above, however, the *Larson-Dugan* exception applies to "*ultra vires* action by a federal officer" that, because it is beyond the officer's statutory or constitutional authority, cannot be considered "the conduct of the sovereign."  *Pollack*, 703 F.3d at 120. Plaintiffs cite no case applying the *Larson-Dugan* exception to an alleged failure to act under an alleged statutory requirement.  *See also id.* (plaintiff's "sole allegation is that the named officers acted unconstitutionally"); *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (plaintiff's challenge to his removal by the defendant from a federal board position); *Clark v. Library of Congress*, 750 F.2d 89, 92, 103-04 (D.C. Cir. 1984) (plaintiff's challenge to background investigation and adverse employment action)

Plaintiffs instead stake their claim to jurisdiction on the D.C. Circuit's decision in *WLF II*. Pls.' Mem. 2.  It is true that the *WLF II* court held that the question whether the *Larson-Dugan* exception to sovereign immunity applied in a common law right of access suit against the U.S. Sentencing Commission merged with the merits of the plaintiff's claim.  89 F.3d at 901-02.  But the court's analysis elided the fact that the *Larson-Dugan* exception only applies when an official is alleged to have acted beyond statutory authority or unconstitutionally.  *See also Judicial Watch v. Schiff*, 474 F. Supp. 305, 313-14 (D.D.C. 2020) (following *WLF II*'s holding on the *Larson-*

*Dugan* exception's applicability as binding precedent), *aff'd on other grounds* 998 F.3d 989 (D.C. Cir. 2021).  This does not appear to have been presented to, or considered by, the D.C. Circuit. Plaintiffs do not argue otherwise.  Because Plaintiffs do not present a claim that a USCP officer has acted "beyond statutory authority or unconstitutionally"—or, at best, presented one only with respect to Count III—they cannot be said to satisfy the requirements of the *Larson-Dugan* exception.[1]

Further, contrary to Plaintiffs' argument, the *WLF II* court did not apply 28 U.S.C. § 1361 to permit the action in that case to proceed, but instead concluded that the case fell within the scope of the *Larson-Dugan* exception.  89 F.3d at 901-02.  And it did so, moreover, in a suit against the U.S. Sentencing Commission, an entity in the *Judicial* Branch.  Thus, regardless whether Plaintiffs attempt to rely on the *Larson-Dugan* exception or § 1361 as basis for jurisdiction, *WLF II* does not, as Plaintiffs contend, "foreclose" the sovereign immunity of entities in the *Legislative* Branch. Pls. Mem. 2; *see United States v. Choi*, 818 F. Supp. 2d 79, 84 (D.D.C. 2011) (Section 1361 "is only a source of jurisdiction for district courts to exercise writs of mandamus to employees of the *Executive* branch.") (citing *Trackwell v. United States Gov't,* 472 F.3d 1242, 1247 (10th Cir. 2007); *Liberation News Serv. v. Eastland,* 426 F.2d 1379, 1384 (2d Cir.1970) ("[I]n enacting [ ]§ 1361 . . . Congress was thinking solely in terms of the executive branch.") (Friendly, J.))).[2] Plaintiffs' resort to the mandamus statute is not a sufficient basis to overcome the Article I

---

[1] Even if Plaintiffs are held to have presented a claim that a USCP officer has acted beyond statutory authority, that claim fails on the merits, and dismissal is therefore warranted on sovereign immunity grounds nonetheless.  *See Judicial Watch*, 474 F. Supp. 3d at 314.

[2] Defendants cited *Choi* for the general proposition that § 1361 does not apply against entities outside the Executive Branch, and not for any broader sovereign immunity proposition. Indeed, the case did not involve a sovereign immunity argument, and there would have been no reason for the court to rely on or otherwise cite the D.C. Circuit's decision in *WLF II.*

Defendants' sovereign immunity.

## II.   PLAINTIFFS' CLAIMS LACK MERIT

If the Court determines that it has jurisdiction to hear Plaintiffs' claims, Defendants are nonetheless entitled to summary judgment.  Plaintiffs have no common law right to access sixty-five of the Capitol Police written directives because they have been determined to be "security information" under 2 U.S.C. § 1979, which cannot be disclosed absent approval by the Capitol Police Board.  There is no dispute that the Board has made no such approval here.  Moreover, none of the 101 USCP written directives at issue is a "public record."  Those directives are rather preliminary materials relied upon by USCP officials and employees whenever they execute their mission or take actions or decisions.

With respect to OIG's SARs, reports, and audits, the Capitol Police Board has made clear that they cannot be released absent approval of the Inspector General and the Board—and again, such approvals are lacking here.  In any event, those documents too are not "public records" but rather preliminary or advisory materials for consideration by Capitol Police leadership; as the Inspector General has stated, he has no authority to take an official action on behalf of the USCP. Finally, Plaintiffs contend that when Congress established the USCP Inspector General and made a narrow reference to a single section of the extant Inspector General Act of 1978, 5 U.S.C.A. App. 3 (IG Act), it intended to impose on the Inspector General all future responsibilities that Congress might add to the IG Act in the future.  The reference canon, however, dispels that conclusion. Assuming the Court has jurisdiction to hear them, Defendants are entitled to summary judgment on all of Plaintiffs' claims.

### A.    Plaintiff has no common law right to access the Capitol Police Directives

*1.    Sixty-five of the Capitol Police written directives are prohibited from disclosure by statute because they are "security information"*

As Defendants have demonstrated, 65 of the 101 written directives at issue in this case have been determined to be "security information" by a USCP document review team, which reviewed the directives for that purpose.   Joyce Decl. ¶ 9, ECF No. 19-5.   Plaintiffs rightly acknowledge that 2 U.S.C. § 1979 prohibits disclosure of "security information" unless the Capitol Police Board, after statutorily prescribed consultations, determines that release of the information will not compromise security and safety.   2 U.S.C. § 1979(b); Pls.' Mem. 9-10.   Plaintiffs do not contend that there has been such a determination by the Board, and there is therefore no basis for requiring the USCP to disclose these 65 directives.

Relying on Freedom of Information Act case law (*Allen v. CIA*, 636 F.2d 1287 (D.C. Cir. 1980), and a classified information case (*Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008)), Plaintiffs argue that the USCP should be required to provide a supplemental declaration with additional detail justifying the review team's determinations for each withheld "piece of information or category of information."   Pls.' Mem. 11-12.   But there is no basis in the common law right of access cases (and Plaintiffs cite none) for the Court to discredit the record evidence from the USCP and impose a more detailed review burden on the review team, where Congress deferred to the Capitol Police Board's judgment and gave "security information" an expansive definition to include any policing information that is "sensitive," 2 U.S.C. § 1979(a)(1), and where Plaintiffs themselves recognize that the specified directives "may contain security information," Pls.' Mem. 11.   While Plaintiffs are correct that § 1979 refers to "information" rather than documents, the common law right of access under which Plaintiffs proceed is for "records" not portions of records redacted for partial disclosure.  *Leopold v. United States*, which Plaintiffs rely

upon, *see* Pls.' Mem. 12, is not to the contrary:  the redactions in that case appear to have been undertaken voluntarily by the government, which had acknowledged that the requested documents "need not necessarily be permanently sealed."  964 F.3d 1121, 1125 (D.C. Cir. 2020).  Defendants here have made no such acknowledgement.

Further, it is inaccurate that the record is "inadequate" (Pls.' Mem. 11) to determine whether the directives fall within the statutory scope of "security information."  The USCP has averred that a dedicated Document Review Team determined 65 of the 101 directives at issue to meet that exceedingly broad statutory definition. Joyce Decl. ¶¶ 8-9.  Plaintiffs offer nothing but unsupported speculation that some of the 65 directives reviewed by the Document Review Team *might* not contain "security information."   Such speculation is insufficient to rebut the Department's own conclusion, especially when it—not Plaintiffs, and not the Court—is best positioned to determine whether a given directive "is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds."  2 U.S.C. § 1979(a)(1).

In § 1979, Congress established a default non-disclosure rule *unless* the Capitol Police Board decides, "in consultation with other appropriate law enforcement officials, experts in security preparedness, and appropriate committees of Congress," to release specific "security information" documents, having found "that the release of the security information will not compromise the security and safety of the Capitol buildings and grounds or any individual whose protection and safety is under the jurisdiction of the Capitol Police."  2 U.S.C. § 1979(b). Plaintiffs' arguments would flip that congressional intent on its head, requiring the USCP to deviate from the default rule in each instance and provide a detailed justification for its security information (and, thus, non-disclosure) determinations.  Plaintiffs have provided no basis to set

aside Congress's explicit framework and second-guess the USCP's assessments as to what constitutes "security information."

### 2. *The written directives are not "public records"*

Setting aside the statutory disclosure prohibition applicable to 65 of the directives, Plaintiffs have no right to access any of the 101 directives at issue because none is a "public record" as the D.C. Circuit has defined that term.  A "public record . . . is a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived," but excludes "the preliminary materials upon which an official relied in making a decision or other writings incidental to the decision itself."  *WLF II*, 89 F.3d at 905-06.   Also excluded are documents that are "advisory, or, for one reason or another, do not eventuate in any official action or decision being taken."  *Id.* at 905.  As the USCP showed in its opening motion, the directives are preliminary or advisory materials—and therefore not public records—because they do not memorialize any official action in their own right, but rather provide instruction and guidance to USCP employees on how to take official action or to reach an official decision.  *See, e.g.*, Joyce Decl. ¶ 11 ("The directives consist of, for example, how USCP personnel are to respond to particular threats or incidents; USCP weapons policies; uniform and equipment policies; traffic control policies; and a variety of personnel policies and programs.").

Plaintiffs contend that the directives are public records because they memorialize a Capitol Police "statement"; or because they memorialize the "action" or "decision" of the Chief to adopt the directive at issue.  Pls.' Mem. 4-5, 8.  The directives, Plaintiffs continue, possess "legal significance" because they set forth official USCP policy, and therefore cannot constitute "preliminary materials" as a matter of law.  *Id.* at 5-6.  According to Plaintiffs' theory then, any document with legal significance is "by definition" not preliminary.  *Id.* at 6.

But Plaintiffs' argument cannot be squared with *WLF II* or the subsequent decision of this Court in *Judicial Watch* which held that even documents which *do* memorialize an official action are, if preliminary, *not* public records.  As noted above, the D.C. Circuit in *WLF II* was clear that its definition of a "public record" would "not encompass" the materials an official relies upon when he or she takes action.   Such "preliminary" or "advisory" materials are simply outside the scope of a "public record."  89 F.3d at 905.  *See also* Pls.' Mem. 5.  This Court in *Judicial Watch* applied that rule, explaining that while the requested congressional subpoenas "certainly reflect an official action" by the Committee, they are nonetheless not public records because they are "so preliminary to any final recommendation."  474 F. Supp. 3d at 315-16.  *Judicial Watch* illustrates that, contrary to Plaintiffs' argument, the preliminary nature of a document disqualifies it as a "public record," even when those documents are "undeniably a form of Committee action."[3]  *Id.*

Plaintiffs cannot avoid that conclusion by arguing that the generally binding nature of USCP directives gives them legal significance and thereby renders them a "public record" *per se*.  Pls.' Mem. 7-8.  Defendants do not dispute that the USCP directives are internally binding on Capitol Police employees in terms of the policy guidance and direction they provide.  But there is no bright-line rule that a legally binding document is a "public record," as Plaintiffs appear to suggest.   If that were so, the congressional subpoenas in *Judicial Watch* would easily have qualified—there was no dispute that the subpoenas issued by the Committee bound the recipient to respond.  The subpoenas could also be challenged in litigation and subjected to judicial review,

---

[3] Citing *United States v. El-Sayegh*, 131 F.3d 158 (D.C. Cir. 1997), Plaintiffs argue that there is no exclusion from the scope of public records for preliminary materials with "legal significance."  Pls.' Mem. 6-7.  In *El-Sayegh*, however, the D.C. Circuit made clear that the inapplicability of the "preliminary materials" exclusion was solely for *judicial* records that were used as part of a court proceeding.  131 F.3d at 162.  That decision is inapposite to the Capitol Police documents at issue in this case.

yet were not public records, undermining Plaintiffs' suggestion (Pls.' Mem. 7) that a judicially reviewable document is a *per se* public record.

Equally unavailing is Plaintiffs' analogy to docket filings made by a party in litigation that are deemed public records.  Pls.' Mem. 5.  Since "not all documents filed with courts are judicial records," courts considering requests for judicial records under the common law undertake the six-factor test under *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), and  consider "the role [the document] plays in the adjudicatory process," *SEC v. Am. Int'l Group*, 712 F.3d 1, 3 (D.C. Cir. 2013).   Applying that test, courts have concluded, for example, that a legal brief and accompanying appendix are judicial records.  *See MetLife v. Fin'l Stability Oversight Council*, 865 F.3d 661, 668-69 (D.C. Cir. 2017).   Yet those conclusions are unique to the *judicial* records inquiry, and have little bearing on documents, like the USCP's directives, generated outside that context.

Plaintiffs' reliance on Exemption 5 from the FOIA context does not help their argument either.  *See* Pls.' Mem. 8.  It may be that an agency's "expression of final agency policy" is not predecisional and therefore not covered by Exemption 5's deliberative process privilege, *see Trea Senior Citizens League v. U.S. Dep't of State*, 994 F. Supp. 2d 23, 34 (D.D.C. 2013), but that does not mean such a document is not "preliminary" in the sense intended by the D.C. Circuit, *i.e.*, a document "upon which an official relied in making a decision or other writings incidental to the decision itself."  *WLF II*, 89 F.3d at 905.  For example, the question in *Trea Senior Citizens League*, on which Plaintiffs rely, was whether a fully executed bilateral international agreement was "pre-decisional" for purposes of the deliberative process privilege, 994 F. Supp. 2d at 34, which differs from whether internal law enforcement directives containing guidance for specific situations are "preliminary" to actual actions taken in those situations for purposes of the common law right of access.

Plaintiffs' final argument—that the directives are not preliminary because "there is nothing left to do to put them into effect"—similarly misses the import of a Capitol Police directive.  Pls.' Mem. 8.  As the USCP explained, the directives "establish forward-looking policies or guidance for its personnel in executing their job responsibilities, at which point the USCP may take official action or make an official decision."  Joyce Decl. ¶ 11.  An official action subject to the directives occurs when the USCP executes part of its mission, *e.g.*, makes an arrest, refers a subject for potential prosecution, or hires or fires an employee.  Again, the subpoenas at issue in *Judicial Watch* are illustrative:  courts look not to each "preliminary step" of a government entity's activity, but only to the final action or recommendation that the entity is empowered to provide.  474 F. Supp. 3d at 315-16.  The directives are merely the backdrop of operational guidance and instruction against which the USCP ultimately takes official action.  Plaintiffs' contrary view would render virtually every written order of the Capitol Police Chief subject to public disclosure, merely because of his authority within the agency.  *See* Pls.' Mem. 8 (arguing that the directives are public records because they are "signed by an individual authorized by statute to put it into force").  But the common law does not require such absolute transparency in a government law enforcement agency.

Defendants are entitled to summary judgment on Plaintiffs' claim of a common law right of access to the Capitol Police written directives (Count I).[4]

---

[4] If the Court determines that the directives are public records, then it should nonetheless not require the USCP to disclose the 65 directives which have been determined to be "security information" by the USCP's Document Review Team.  The USCP maintains a strong "interest in keeping [those] documents secret" given their sensitivity under 2 U.S.C. § 1979.  *See WLF II*, 89 F.3d at 902.

**B.     Plaintiff has no right to the OIG reports under either the common law or federal statute**

1.     *The Capitol Police Board Order plainly prohibits disclosure of the requested OIG semiannual reports, reports, and audits*

In 2017, the Capitol Police Board issued Order 17.16 (the 2017 Order) "pursuant to the authorities provided under 2 U.S. Code § 1979" and prohibited the disclosure of all OIG information, including audit reports and investigations reports "outside the United States Capitol Police or Capitol Police Board."  Bolton Decl., Ex. A, ECF Nos. 19-3, 19-4.  The Board and the Inspector General may, however, authorize disclosure of OIG information pursuant to subsection 2 of the 2017 Order.  *Id.*  Because the documents Plaintiffs have requested—Inspector General semiannual reports (SARs), other reports, and audits—are all OIG information, and because there is no dispute that the Board and the Inspector General have not approved their disclosure, those documents cannot be disclosed to Plaintiffs.  Defs.' Mem. Supp. Mot for Summ. J., ECF No. 19-2 (Defs.' Mem.) 12-14.

Plaintiffs resist what they concede is the "absolute" or "literal" language (Pls.' Mem. 23, 25) of the 2017 Order for three reasons.  First, Plaintiffs contend that when the Inspector General gave testimony to Congress earlier this year, he characterized certain findings in two "Flash Reports" regarding the events of January 6 as "non-law enforcement sensitive."  Pls.' Mem. 24 (citing Pls.' Ex. 3).  But the Inspector General has already explained that based on the express provisions of 2 U.S.C. § 1979(c), incorporated by reference into the 2017 Order, the 2017 Order does not prohibit disclosures of covered information to Congress when requested.  And in any event, the Capitol Police Board authorized the release of the Executive summary and recommendations portions of the February 2021 Flash Report (and from other Flash Reports) on which Plaintiffs rely.  *See* attached Second Declaration of Michael Bolton ¶¶ 2-3; *see also* Bolton Decl. ¶ 9.  Given the Board's approval of this release, it is immaterial that the Inspector General

made reference to "non-law enforcement sensitive" information when he appeared before the Committee on House Administration in 2021. *See* Pls.' Ex. 3. Further, even if such a reference by the Inspector General during a congressional hearing is not perfectly consistent with the terms of the 2017 Order, it does not follow that Defendants must now release years' worth of SARs, audits, and other reports whose disclosure is expressly prohibited by that Order.

Second, Plaintiffs refer to the four external peer reviews which are currently posted on OIG's website.   Pls.' Mem. 24; *see* https://www.uscp.gov/the-department/office-inspector-general/audits-investigations.   But those reviews are conducted, and the peer review reports publicly posted, as part of the External Peer Review program required by the Comptroller General under the IG Act.[5]   Those documents are not USCP OIG information, but rather reports by peer IGs within the government on whether USCP OIG is complying with relevant standards applicable to government inspectors general. *Id.* at 1. Plaintiffs fail to explain how the USCP OIG's participation in this program, and compliance with the program's public posting requirements for the peer review reports, compels disclosure of the SARs, reports, and audits Plaintiffs seek.

Third and finally, Plaintiffs point to the restriction language in OIG's February 2021 Flash Report on January 6. *Id.* at 25; Pls.' Ex. 4. Because that language contemplates authorization by the Inspector General *or* the Board of secondary distribution of the Flash Report, not "and the Board" as the 2017 Order requires, Plaintiffs argue that the Inspector General has discretion to

---

[5] Section 4(b)(1) of the IG Act obligates the USCP Inspector General (and other inspectors general) to "comply with standards established by the Comptroller General of the United States for audits of Federal establishments, organizations, programs, activities, and functions." IG Act § 4(b)(1)(A). Those standards established by the Comptroller General include the Government Accountability Office's *Government Auditing Standards*, commonly referred to as the "Yellow Book." The Yellow Book in turn requires the USCP Inspector General (and other inspectors general) to undergo an external peer review by another auditor, and to "post[] the [peer review] report on a publicly available website or to a publicly available file." Yellow Book § 5.78, https://www.gao.gov/assets/gao-21-368g.pdf.

disclose OIG information.  But the inconsistency between the Flash Report's restriction language and the 2017 Order is insufficient to nullify the terms of the latter, or, for that matter, the terms of section 1979(b), which authorizes the Board, and not the Inspector General, to permit release of security information.  *See* 2 U.S.C. § 1979(b).  Moreover, even if Plaintiffs were right that the Inspector General does possess the discretion to alone approve disclosure of the requested SARs, reports, and audits—even though Plaintiffs have not alleged that the same restriction language might apply to those requested documents—there is no question that he has *not* approved their disclosure.

Plaintiffs also contend that the SARs, audits, and reports do not consist entirely of "security information" and that the 2017 Order therefore should be ignored.  Pls.' Mem. 26-27, 32-38.  But the 2017 Order by its terms prohibits disclosure of not just "security information" but all "Office of Inspector General information," and specifically identifies "audit reports" and "investigations reports" among the items covered.  Bolton Decl., Ex. A.  In any event, the information on which Plaintiffs principally rely for this argument—peer reviews of the USCP OIG conducted by another inspector general's office—is already required to be made publicly available, as Plaintiffs themselves have pointed out.  *See* Pls.' Mem. 24-26 (posting of four external peer reviews), 27. The fact that OIG posts peer review reports, as it is required to do by the Comptroller General under the IG Act, does not compel disclosure of the SARs, reports, and audits.

Meanwhile, Plaintiffs' reliance on a June 2010 OIG audit report and its public availability is of no moment, since that audit report predates the 2017 Order—and its information designation and disclosure prohibition—by seven years.  *See id.* at 33 & Ex. 5.  Equally unavailing is Plaintiffs' reliance on OIG reports from *different* law enforcement agencies.  Pls.' Mem. 35-37.  Reports issued by separate OIGs, such as those in the FBI, the National Security Agency, and the Metropolitan Police Department are not subject to the Capitol Police's 2017 Board Order, and thus

do not confront the same disclosure prohibition it sets forth.  Insofar as Plaintiffs cite these other OIG reports to suggest that the Inspector General should redact his reports, the Board in its 2017 Order has already reached the policy determination that such selective disclosure is not permissible without its approval, which unquestionably has not occurred here.  Moreover, while the common law may provide a right of access to government *records*, it does not supply a right to particularized pieces of information or portions of records.  Indeed, the D.C. Circuit's governing "public record" test, which looks to the nature of the whole document, not snippets of information contained in it, makes sense only if it contemplated the disclosure of whole documents.  It would not have fashioned a document-specific legal test if a plaintiff were entitled to litigate its entitlement to information at such a finer level of granularity.

### 2. *OIG's semiannual reports, audits, and reports are not "public records"*

Plaintiffs contend that the SARs are public records because they "memorialize the actions and decisions of the OIG."  Pls.' Mem. 17.  Plaintiffs make a similar argument for the other requested reports and audits.  *Id.* at 30 (contending that reports "memorializ[e] governmental actions or activity" and that audits "memorialize an OIG's conclusion about the data presented").  Those reports and audits and the recommendations they contain are, by statutory directive in § 5 of the IG Act, summarized in each SAR prepared by OIG, along with additional activities undertaken by the Inspector General as prescribed by Congress.  The SAR thus provides on a semiannual basis a snapshot of all of OIG's during the preceding six-month period, much of which is laid out in further detail in the individual reports and audits sought by Plaintiffs.  As Defendants have explained, the OIG SARs, reports, and audits are not official actions or decisions by the agency but rather findings and, if warranted, recommendations from the Inspector General for official action to Capitol Police leadership.  As the Inspector General explained, "OIG lacks authority to implement its own recommendations," as that authority to take official action on behalf

of the USCP resides only in the Chief or the Capitol Police Board.  Bolton Decl. ¶ 12.

The requested SARs, reports, and audits are thus "preliminary materials" which the D.C. Circuit has excluded from the definition of a "public record."  *WLF II*, 89 F.3d at 905.  None of Plaintiffs' contrary arguments is persuasive.  Plaintiffs generally resist this conclusion by contradicting the Inspector General's own assessment of his office's authority, arguing that "OIG reports are an official statement of the OIG and memorialize official actions taken by that office." Pls. Mem. 31; *see also id.* 18 (Plaintiffs arguing that a SAR's purpose is to "summarize for Congress facts about the OIG's actions and decisions").  But Plaintiffs offer no evidentiary basis for their contrary view that OIG can take official action on behalf of the USCP; the only record evidence from the Inspector General says otherwise.

Plaintiffs also argue that certain statistical tables are not "preliminary" because they concern "final actions" that have already been taken by the USCP.  Pls.' Mem. 19.  Insofar as Plaintiffs are referring to the "statistical tables" referenced in § 5(b)(2) and § 5(b)(3) of the IG Act (their memorandum is unclear on this point), those tables are not contained in the SAR itself, but rather in a separate "report by the head of the establishment" that is not within the scope of Plaintiffs' request.  *See* IG Act § 5(b) (requiring transmission to Congress of "a report by the head of the establishment," which is separate from the SAR).  Plaintiffs further maintain that any "factual information" must be disclosed because it "would not qualify for the deliberative process privilege."  Pls.' Mem. 19.  But that argument confuses a litigation privilege with the test for a "public record":  Defendants are aware of no requirement that non-privileged information must be disclosed in response to a common law right of access request.

Plaintiffs rely on *WLF II* to suggest that a final auditor's report would qualify as a "public record."  Pls.' Mem. 30 (citing *WLF II*, 89 F.3d at 905).  But that hypothetical situation described by the D.C. Circuit is at most dicta, and the court stopped short of establishing a default disclosure

rule for all audits, as Plaintiffs suggest it did.  An audit report or financial audit is in any event little different from the other reports that the Inspector General issues; that is, it contains OIG's findings and, if warranted, recommendations to USCP leadership for future improvement.  *See* Bolton Decl. ¶ 7.  No matter how Plaintiffs may seek to recharacterize OIG's role within the Capitol Police's organizational structure, it remains the case that the Inspector General is not authorized to take official action on the Department's behalf.  Rather, the Inspector General produces reports which, just like the reports at issue in *Pentagen Technologies International v. Committee on Appropriations*, "examine" and "evaluate" USCP programs in order to assist the Department execute its mission as efficiently as possible.   20 F. Supp. 2d 41, 43 (D.D.C. 1998). Meanwhile, the fact that certain states may have enacted state laws permitting public inspection of state auditors' records has no bearing on the instant case.  *See* Pls.' Mem. 30-31 (relying on Michigan Supreme Court case construing state law).

Proposing a new legal rule, Plaintiffs also argue that the SARs, audits, and reports should necessarily be deemed "public records" because they are required by law to be created.  *Id.* at 20-22 (SARs), 32 (audits and reports).  Again relying on cases interpreting state law, Plaintiffs argue that the D.C. Circuit "declined to decide the question of whether documents may qualify as public records by virtue of the fact that a government official is required by law to compile them."  Pls.' Mem. 20.  But the D.C. Circuit did not merely decline to decide the question, it refused to adopt the "required by law to be kept" standard (or, as the court elsewhere put it, "required to be compiled"), and elected to formulate a different legal test.  *WLF II*, 89 F.3d at 904-06 (noting a "range of definitions of 'public record,' perhaps the most restrictive of which is 'a written memorial, made by a public officer . . . . required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done'" (quoting *Amos v. Gunn*, 94 So. 615, 634 (1922))).

Adopting this rule here would not only upset the governing test in the D.C. Circuit for a "public record," but would open wide swaths of government documents to potential release under the common law.  For example, the Federal Records Act imposes broad records preservation requirements on federal agencies, including the USCP.  *See generally* 44 U.S.C. § 3101 *et seq.* (requiring the head of each federal agency to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency").  Plaintiffs' rule would effectively transform the Federal Records Act into a disclosure statute.

Defendants do not dispute that Congress has prescribed the specific contents of the SARs to be prepared by the Inspector General, and that it has required OIG to submit each SAR to the Chief of Police (and the Chief, in turn, to report to the Board and Congress).  *See* Defs' Mem. 8-9 (explaining interaction between 2 U.S.C. 1909(c)(2) and the IG Act's SAR provisions).  Yet, as Defendants also explained, unlike other inspectors general under the IG Act, Congress also did not require the USCP Inspector General to make a SAR available to the public upon request.  *Id.* at 9. Plaintiffs failed to respond to this argument in their memorandum, and it is therefore conceded. *See, e.g.*, *Singh*, 55 F. Supp. 3d at 66; *Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) (when a party fails to respond to an argument raised in a motion, "it is proper to treat that argument as conceded").  Plaintiffs' position, which would provide the public with free access to the USCP Inspector General's SARs, would create an end-run around Congress's carving the USCP out of the public disclosure requirement for those very SARs.  The Court should not "craft federal common law when Congress has spoken directly to the issue at hand."  *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 937 (D.C. Cir. 2003) ("Congress has provided a carefully calibrated statutory scheme, balancing the benefits and harms of disclosure. That scheme preempts any preexisting common law right.").

3.      *Plaintiffs lack any statutory right to OIG audits and reports recommending corrective action*

Defendants in their opening motion demonstrated how Congress, when it enacted 2 U.S.C. § 1909(c)(1) referencing the duties and responsibilities of Inspectors General under section 4 of the IG Act, could not have intended to include a duty to post material on public websites, when that duty had not yet been enacted. Defs.' Mem. 10-11. Under the reference canon, "when a statute refers to a general subject, the statute adopts the law on that subject as it exists whenever a question under the statute arises. . . . In contrast, a statute that refers to another statute by specific title or section number in effect cuts and pastes the referenced statute as it existed when the referring statute was enacted, without any subsequent amendments." *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 769 (2019); Defs.' Mem. 10-11. Here, § 1909(c)(1) refers "to another statute by specific title or section"—namely, § 4 of the IG Act. 2 U.S.C. § 1909(c)(1) ("The Inspector General shall carry out the same duties and responsibilities with respect to the United States Capitol Police as an Inspector General of an establishment carries out with respect to an establishment under section 4 of the Inspector General Act of 1978, (5 U.S.C. App. 4), under the same terms and conditions which apply under such section."). The alleged duty at issue—to "post the document making a recommendation for corrective action on the website of the Office of Inspector General," IG Act § 4(e)(1)(C)—did not exist when 2 U.S.C. § 1909(c)(1) was enacted in 2005. *See* Compl. ¶ 13.[6] Only eleven years later in 2016 did Congress make that addition to the IG Act. Thus, because the public posting requirement did not exist when Congress in § 1909(c)(1) applied § 4 of the IG Act to the USCP IG, the public posting requirement does not apply to the USCP IG.

---

[6] Plaintiffs have abandoned their argument based on § 8M(b)(1)(A) of the IG Act. *See* Defs.' Mem. 11.

In opposition, Plaintiffs argue that under the "natural reading" of § 1909(c)(1), "there are no differences between how [section 4 of the IG Act] operates with respect to the U.S. Capitol Police and executive branch establishments." Pls.' Mem. 42. That reading ignores the fact that § 1909(c)(1) "refers to another statute by specific title or section" and thus the rule articulated in *Jam*. Plaintiffs claim that the "same duties and responsibilities" and "same terms and conditions" language in § 1909(c)(1) is "indistinguishable from the language in the statute at issue in *Jam*," *id.*, but the statute in *Jam* undisputedly did not refer to another statute by specific title or section. 139 S. Ct. at 769 ("The . . . reference to the immunity enjoyed by foreign governments is a general rather than specific reference. The reference is to an external body of potentially evolving law— the law of foreign sovereign immunity—not to a specific provision of another statute.").

Plaintiffs' reliance on the Second Circuit's decision in *United States v. Ho*, 984 F.3d 191 (2d Cir. 2020), likewise does not support their argument. In *Ho*, the statutory reference was far more general, referring to "*any* felony violation of the Foreign Corrupt Practices Act," *id.* at 202 (citing 18 U.S.C. § 1956(c)(7)(D) (emphasis added)), and the court of appeals accordingly characterized this as "refer[ring] to a *concept* described in another provision," *id.* (emphasis added). The court further observed that "the use of the word 'any'" in connection with the FCPA "reinforces the natural reading of the statute to refer to whatever conduct constitutes such a violation." *Id.* In § 1909(c)(1), by contrast, Congress employed the definite article "the" when referring to the "duties and responsibilities" set forth in § 4 of the IG Act; it did not use a term like "any" or "all" which "contains no textual limitation" and which has "expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Id.* (quoting *United States v. Gonzales*, 52 U.S. 1, 5 (1997)).

Plaintiffs also argue that applying the reference canon here would deprive Congress of additional information it has sought to receive in SARs "from OIGs generally," as Plaintiffs put it.

Pls.' Mem. 44.   But when Congress amended § 5 of the IG Act in the Inspector General Empowerment Act, Pub. L. No. 114-317, 130 Stat 1595 (2016), by adding new requirements to a SAR, those requirements apply by virtue of § 5 itself to "OIGs generally."   Contrary to Plaintiffs' contention, Congress would thus continue to receive from other OIGs the information set forth in an amendment.   And, moreover, insofar as 2 U.S.C. § 1909 points to § 5 of the IG Act, it is in a different provision (§ 1909(c)(2)) from the one Plaintiffs focus on for their website posting argument (§ 1909(c)(1)).

The remainder of Plaintiffs' statutory argument consists of speculation about the Board's motive in issuing its 2017 Order, and an argument that the Board intentionally interfered with the Inspector General.   Pls.' Mem. 43-44.   But the face of the 2017 Order nowhere refers to § 1909 or to the IG Act's website posting requirement, and there is no basis in the record to impute an intent to interfere to the Board, as Plaintiffs suggest.

Defendants are entitled to summary judgment on Plaintiffs' claims of a common law right of access to the OIG SARs, reports, and audits (Count I), a statutory right to the SARs (Count II), and a statutory right to OIG audits and reports recommending corrective action (Count III).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Cross-Motion for Summary Judgment should be denied and Defendants' Motion for Summary Judgment should be granted.

Dated:  December 17, 2021                    Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Acting Assistant Attorney General

                                            MARCIA BERMAN
                                            Assistant Director
                                            Federal Programs Branch

/s/ M. Andrew Zee
M. ANDREW ZEE (CA Bar No. 272510)
Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6646
Fax: (415) 436-6632
E-mail: m.andrew.zee@usdoj.gov

*Counsel for Defendants*