## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JASON LEOPOLD, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>J. THOMAS MANGER, *Chief, U.S. Capitol Police*, *et al.*,<br><br>Defendants. | Civil Action No. 21-cv-00465 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiffs Jason Leopold and his employer Buzzfeed News assert that the common-law right to public access and certain statutory duties of disclosure require defendants, the Chief of the United States Capitol Police ("USCP") and the Inspector General of the Capitol Police, both in their official capacities, to disclose certain requested documents relating to internal USCP operations. *See generally* Am. Compl. ¶¶ 8–17, ECF No. 12.[1] Defendants contend that sovereign immunity bars the exercise of jurisdiction here and that no valid claim is presented, warranting the grant of summary judgment in their favor, pursuant to Federal Rule of Civil Procedure 56, Defs.' Mot. Summ. J. (Defs.' Mot.) at 1, ECF No. 19; Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem.") at 7–8, ECF No. 19-2, while plaintiffs invoke the common-law and statutory duties of disclosure as creating an exception to sovereign immunity, entitling them to mandamus relief ordering the production of the requested documents, Pls.' Cross-Mot. Summ. J. & Opp'n Mot. Summ. J. ("Pls.' Cross-Mot.") at 1, ECF No. 22; Pls.' Mem. Supp. Cross-Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. ("Pls.' Opp'n") at 2–4, ECF No. 22.

---

[1] Chief J. Thomas Manger is substituted as defendant for former Acting Chief Yogananda D. Pittman. *See* FED. R. CIV. P. 25(d).

1

For the reasons explained below, defendants' motion for summary judgment is construed to be a motion for dismissal for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See, e.g.*, *Kirkham v. Société Air Fr.*, 429 F.3d 288, 291 (D.C. Cir. 2005) (treating summary judgment motion, which raised sovereign immunity, as motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, explaining that summary judgment "represents a decision on the merits, which courts may render only after jurisdiction has been established"); *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 21 (D.D.C. 2020) (Jackson, K.B., J.) (construing motion styled as motion for summary judgment "as a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) or, *in the alternative*, a motion for summary judgment under Rule 56(a)" (emphasis in original)); *Whiteru v. WMATA* , 258 F. Supp. 3d 175, 181–82 (D.D.C. 2017) (Jackson, K.B., J.) (construing motion for summary judgment on the basis of sovereign immunity as a motion to dismiss under Rule 12(b)(1)).  *See also Hakki v. Sec'y, Dep't of Veteran Affs.*, 7 F.4th 1012, 1022–23 (11th Cir. 2021) (holding that challenge to subject matter jurisdiction on motion under Rule 56(a) was "reasonably construed" as Rule 12(b)(1) motion); *Smith v. WMATA*, 290 F.3d 201, 205 (4th Cir. 2002) ("[A]n assertion of governmental immunity is properly addressed under the provisions of Rule 12(b)(1) of the Federal Rules of Civil Procedure.").  So construed, defendants' motion is granted, requiring dismissal of the Complaint.

## I.    BACKGROUND

Following the January 6, 2021, attack on the U.S. Capitol, plaintiffs—investigative journalist Jason Leopold and Buzzfeed News—planned to prepare and publish one or more articles about the USCP.  Am. Compl. ¶ 1.  To that end, on January 28, 2021, plaintiffs submitted requests to the USCP's Public Information Office and the USCP Office of Inspector General

("OIG") seeking six categories of documents: (1) "Inspector General semiannual reports for 2015 forward," *id.* ¶ 4; (2) "other Inspector General reports, including audits for 2008 forward," *id.*; (3) "annual financial statements and audits of annual financial statements for 2015 forward," *id.*; (4) "semiannual reports of disbursements for 2015 forward," *id.*; (5) "USCP written directives in effect on January 6, 2021," *id.*; and (6) "demonstration permits, denials, or other written memorials of final decisions relating of final decisions relating to permits for public gatherings on the Capitol grounds on January 6, 2021," *id.  See also* Pls.' Pet. Writ of Mandamus ("Pls.' Pet."), Ex. 1, Document Request Emails, ECF No.  1-1;[2] Defs.' Statement of Material Facts As to Which There Is No Genuine Issue ("Defs.' SMF") ¶ 3, ECF No. 19-1.[3]

Shortly thereafter, on February 11, 2021, USCP's general counsel responded to plaintiffs' request by email, declining to provide the documents and suggesting other points of contact to obtain some categories of information.  Pls.' Pet., Ex. 2, Initial Request Response, ECF No. 1-1; Defs.' SMF ¶ 4.  Three weeks later, on February 23, 2021, plaintiffs filed the instant suit to obtain the requested documents, pursuant to the common-law right of public access and a statute governing the USCP OIG, 2 U.S.C. § 1909.  Pls. Pet.; Am. Compl. ¶¶ 8–17.

Since the filing of this lawsuit, defendants have disclosed a number of documents to plaintiffs, narrowing considerably the scope of the requested records remaining at issue in this

---

[2]     Plaintiffs initiated this lawsuit with a filing captioned "Petition for A Writ of Mandamus," ECF No. 1, which defendants sought to dismiss on grounds that plaintiffs had not filed an appropriate complaint, Defs.' Mot. Dismiss, ECF No. 10; Def.' Mem. Supp. Mot. Dismiss at 3–6, ECF No. 10-1.  Plaintiffs thereafter filed the amended complaint, ECF No. 12, resulting in dismissal as moot of defendants' motion, *see* Minute Order (June 1, 2021).

[3]     Plaintiffs have controverted no facts in defendants' statement of material facts, *see* Pls.' Cross-Mot. Supp. Summ. J., Pls.' Statement of Material Facts As to Which There Is No Genuine Issue ("Pls.' SMF"), ECF No. 22-2, and thus the facts set out by defendants may be deemed admitted.  *See* LCvR 7(h)(1) ("In determining a motion for summary judgment, the court may that assume facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for the purposes of the [summary judgment] motion . . . .").

lawsuit.[4]  Plaintiffs continue to seek, and defendants decline to disclose, the following documents: (1) 101 USCP written directives in effect on January 6, 2021, which directives detail internal policies and guidance for USCP operations and have been classified by USCP as "Law Enforcement Sensitive," Pls.' Reply Supp. Pls.' Cross-Mot. for Summ. J. ("Pls.' Reply) at 4–18; Defs.' SMF ¶¶ 3, 10; Decl. of James Joyce, Senior Counsel, USCP's Office of the General Counsel ("OGC Decl.") ¶ 11, ECF No. 19–5; (2) semiannual OIG reports from 2015 to the present, Pls.' Reply at 18–22; Defs.' SMF ¶ 3; and (3) all other OIG reports, including audits, from 2008 to the present, Pls.' Reply 22–25; Defs.' SMF ¶ 3.

As to the 101 USCP written directives at issue, defendants maintain that these directives, which are classified as "Law Enforcement Sensitive," may not be disclosed because they detail internal policies and guidance for USCP operations and "would reveal confidential sources and methods, investigative activities and techniques" that should not be made public.  Defs.' SMF ¶ 10; OGC Decl. ¶¶ 10–12.  Furthermore, 65 of the 101 written directives have been designated by a USCP document review team as "security information," as defined in 2 U.S.C. § 1979(a), meaning that their disclosure is statutorily prohibited absent authorization from the U.S. Capitol Police Board ("USCP Board"), which authorization has not been granted.  Defs.' SMF ¶ 8; OGC Decl. ¶ 9 (citing 2 U.S.C. § 1979).  As to the requested OIG reports, defendants maintain that the semiannual and other OIG reports are also "Law Enforcement Sensitive" and deemed "security information" under 2 U.S.C. § 1979(a), and public distribution of these OIG reports has been

---

[4]  The following requested records have been disclosed to plaintiffs: (1) semiannual reports of USCP disbursements from 2015 to the present, Defs.' SMF ¶ 5; (2) demonstration permits, denials, or other written materials of final decisions relating to permits for public gatherings on the Capitol grounds on January 6, 2021, *id*. ¶ 6; and (3) two USCP written directives in effect on January 6, 2021, *id*. ¶ 7.  Plaintiffs are no longer asserting a right to access the requested USCP financial statements, and have narrowed their request for the outstanding USCP written directors to 101 directives.  *See* Pls' Reply Supp. Pls.' Cross-Mot. Summ. J. ("Pls.' Reply") at 4–25, ECF No. 27; Decl. of James Joyce, Senior Counsel, USCP's Office of General Counsel ("OGC Decl.") ¶¶ 8-10, ECF No. 19-5; Defs.' Mot., Ex. C, List of Directives, ECF No. 19-7 (listing the specific 101 directives still at issue).

specifically prohibited by the USCP Board in a 2017 order issued pursuant to the Board's statutory authority to regulate the distribution of such security information.  Defs.' SMF ¶¶ 13–14; Decl. of Michael Bolton, USCP's Inspector General ("IG Decl.") ¶¶ 7–10, ECF No. 19-3 (citing IG Decl., Ex. A, Capitol Police Board Order 17.16 (Dec. 12, 2017) ("2017 Order"), ECF No. 19-4); *see also* 2 U.S.C. § 1979(b), (d).

The parties' pending motions are now ripe for review.

## II.    LEGAL STANDARD

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'"  *Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see also Gunn v. Minton,* 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))). Federal courts therefore have a corresponding "independent obligation to ensure that they do not exceed the scope of their jurisdiction" and "must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Absent subject-matter jurisdiction over a case, the court must dismiss it.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); FED. R. CIV. P. 12(h)(3).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim at issue.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  When considering a motion to

dismiss under Rule 12(b)(1), the court must determine jurisdictional questions by accepting as true all uncontroverted material factual allegations contained in the complaint and "'constru[ing] the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 281 (D.C. Cir. 2022) (second alteration in original) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)).  The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions.  *Id*. at 288 (making clear that liberally construing complaint in plaintiff's favor "does not entail accept[ing] inferences unsupported by facts or legal conclusions cast in the form of factual allegations" (alteration in original) (internal quotation omitted)); *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The court "may consider materials outside the pleadings" in assessing whether subject matter jurisdiction may be exercised.  *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## III.   DISCUSSION

Defendants argue that the doctrine of sovereign immunity deprives the Court of jurisdiction over defendants, as Legislative Branch officers who were sued in their official capacity.  Defs.' Mem. at 5–7.  Plaintiffs counter that an exception to sovereign immunity applies, *see* Pls.' Opp'n at 2–4, and, further, that the common-law right of access and a statutory right of access, under 2 U.S.C. § 1909(c), mandate the disclosure of the requested materials, *see id.* at 4–40, 40–45.  Each argument is addressed in turn.[5]

---

[5]     Defendants also argue that plaintiffs' claims fail on the merits for several reasons, including that the Inspector General Act of 1978 ("IG Act"), 5 U.S.C. App. 3, does not amount to a statutory entitlement to the disclosure of OIG reports, a substantial portion of the requested materials are statutorily prohibited from disclosure as security information, and the requested materials do not qualify as public records cognizable under the common law right of access.  Defs.' Mem. at 5.  Except to the extent these arguments are intertwined with the jurisdictional analysis, *see infra* Part III.A.2, 3, they need not be addressed as the complaint is dismissed for lack of subject-matter jurisdiction.  *See Al-Tamimi v. Adelson*, 916 F.3d 1, 7 (D.C. Cir. 2019) (finding that district court properly

### A.   Sovereign Immunity

Generally, "a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal quotations and citations omitted).  For such suits, "[t]he basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." (citations omitted)); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008) ("The United States is protected from unconsented suit under the ancient common law doctrine of sovereign immunity."  (quoting *Gray v. Bell*, 712 F.2d 490, 506 (D.C. Cir. 1983))).  Any "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).

The D.C. Circuit has "generally . . . concluded that '[f]ederal agencies or instrumentalities performing federal functions *always* fall on the "sovereign" side of [the] fault line'" and thus the doctrine of sovereign immunity forecloses claims against those entities as institutions.  *Albrecht v. Comm. on Emp. Benefits*, 357 F.3d 62, 67 (D.C. Cir. 2004) (quoting *Auction Co. of Am. v. FDIC*, 132 F.3d 746, 752 (D.C. Cir. 1997)) (alterations and emphasis in

---

considered jurisdictional issue "before considering whether dismissal for failure to state a claim was appropriate under Fed. R. Civ. P. 12(b)(6)"); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868))).

the original).  Agencies within the legislative branch are therefore no exception.  *See, e.g.*, *Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (holding that sovereign immunity "forecloses . . . claims against the House of Representatives and Senate as institutions," and against members of both congressional houses "acting in their official capacities," because "an 'official capacity' suit is treated as a suit against a government entity" (quoting *Rockefeller v. Bingaman*, No. CIV-06-0198, 2006 WL 4061183, at *3 (D.N.M. Sept. 20, 2006) and citing *Keener v. Cong. of the U.S.*, 467 F.2d 952, 953 (5th Cir. 1972)); *Cofield v. United States*, 64 F. Supp. 3d 206, 213–14 (D.D.C. 2014) ("[S]overeign immunity bars any claim for money damages against the United States (including the U.S. Senate) and its agencies.").  Given that a suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," courts must treat an official capacity suit as "a suit against the entity," and apply the governing principles of sovereign immunity accordingly.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (internal quotations and citations omitted).

Plaintiffs sued the U.S. Capitol Police and its Inspector General for records generated in their official capacity.  Am. Compl. ¶¶ 2–4.  The USCP is a federal agency within the Legislative Branch, *see* 2 U.S.C. § 1901 *et seq.*; Defs.' SMF ¶ 1; *see also, e.g.*, *Baugh v. U.S. Capitol Police*, Civ. No. 22-139, 2022 WL 2702325, at *4 (D.D.C. July 12, 2022).  As such, plaintiffs apparently concede that sovereign immunity would ordinarily bar suit, but nonetheless dispute that such immunity operates to bar this case because, instead of seeking monetary damages, they seek mandamus relief under 28 U.S.C. § 1361.  Pls.' Opp'n at 2.  Specifically, they contend that the so-called *Larson-Dugan* exception to sovereign immunity applies to permit this suit to go forward.  *Id.* at 2–3 (first citing *Wash. Legal Found. v. U.S. Sent'g Comm'n* ("*WLF II*"), 89 F.3d

897, 901 (D.C. Cir. 1996), then *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682 (1949),

then *Dugan v. Rank*, 372 U.S. 609 (1963)).  As the analysis that follows shows, even upon

application of the *Larson-Dugan* exception to sovereign immunity, no disclosure of the

requested records is required.

### 1.    *Application of the* Larson-Dugan *Exception*

In *Larson v. Domestic & Foreign Commerce Corp.*, the plaintiff sued the head of the War

Assets Administration, not for money damages, but for specific performance of the delivery of

surplus coal in accordance with the plaintiff's contract with the government, 337 U.S. 682, 684–

85 (1949).  Finding that the Administrator's action in refusing the coal shipment to the plaintiff

was not unconstitutional or *ultra vires* conduct outside the scope of the Administrator's

authority, nor contrary to statute or order, *id.* at 703, the Supreme Court concluded that the

Administrator's action "was, therefore, inescapably the action of the United States and the effort

to enjoin it must fail as an effort to enjoin the United States," *id.*; *see also id.* at 688 (noting suit

would be barred "not because it is a suit against an officer of the Government, but because it is,

in substance, a suit against the Government over which the court, in the absence of consent, has

no jurisdiction").  The Court thereby clarified, and made explicit in *Dugan v. Rank*, 372 U.S. 609

(1963), an exception to sovereign immunity in actions seeking specific relief for "(1) action by

[government] officers beyond their statutory powers [or] (2) even though within the scope of

their authority, the powers themselves or the manner in which they are exercised are

constitutionally void."  *Id.* at 621–22.  "In either of such cases the officer's action 'can be made

the basis of a suit for specific relief against the officer as an individual.'"  *Id.* at 622 (quoting

*Malone v. Bowdoin*, 369 U.S. 643, 647 (1962)); *see also Dalton v. Specter*, 511 U.S. 462, 472

(1994)) (quoting *Larson*, 337 U.S. at 691 n.11) (summarizing *Larson* as holding "that sovereign

immunity would not shield an executive officer from suit if the officer acted either 'unconstitutionally *or* beyond his statutory powers'" (emphasis in original)); *Pollack v. Hogan*, 703 F.3d 117, 119–21 (D.C. Cir. 2012); *id.* at 120 (quoting *Larson,* 337 U.S. at 689) ("Under [the *Larson-Dugan*] exception, 'suits for specific relief against officers of the sovereign' allegedly acting 'beyond statutory authority or unconstitutionally' are not barred by sovereign immunity.").

Defendants first contend that "to proceed with this suit, Plaintiffs must identify a waiver of sovereign immunity that is 'unequivocally expressed in statutory text,'" and that because they have not, sovereign immunity remains in force.  Defs.' Mem. at 12 (quoting *Lane*, 518 U.S. at 192).  This argument is insufficient.  As *Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305 (D.D.C. 2020), states regarding mandamus relief, defendants' argument "merely begs the question," *id.* at 312, because, if the *Larson-Dugan* exception does apply, "[n]o separate waiver of sovereign immunity is required to seek a writ of mandamus to compel an official to perform a duty required in his official capacity," *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005); *see also WLF II*, 89 F.3d at 901 ("If a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity, however, no separate waiver of sovereign immunity is needed." (citing *Chamber of Cong. of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996))).

Defendants' next argument is that the *Larson-Dugan* exception is inapplicable because "Plaintiffs have not identified any officer of the sovereign who they allege is exceeding his or her statutory or constitutional authority."  Defs.' Mem. at 12 (internal quotation omitted).  Instead, plaintiffs only allege a failure to act under purported statutory duties and a violation of a common law (as opposed to statutory or constitutional) right of access.  *Id.* at 12–13.  Binding

D.C. Circuit precedent, however, is clear that these violations can indeed trigger the *Larson-Dugan* exception.  In *WLF II*, plaintiffs sought, pursuant to the common-law right of public access to government records, disclosure of documents "compiled or created by an advisory committee established by the United States Sentencing Commission."  89 F.3d at 898–99.  In the Circuit's analysis, the relevant "duty" owed by the defendants in the case stemmed from the common-law right itself, not a separate statute or regulation.  *Id.* at 901.  Whether the *Larson-Dugan* exception to sovereign immunity applies "depends upon whether the Government has a duty to the plaintiff, *viz.* to allow it access to certain government records."  *Id.*[6]

As a result, applicability of the exception turns first on the existence of the duty, and the application of sovereign immunity merges with the claimed duty to disclose asserted in the Complaint.  The D.C. Circuit explained: "the question of jurisdiction merges with the merits," triggering an assessment of the validity of plaintiff's claim under the common-law right of access.  *Id.* at 902.  *See also Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (determining whether "the *Larson-Dugan* exception would be triggered and hence no waiver of sovereign immunity is required" rested on "discussion of the central merits question in the case, namely

---

[6]       The D.C. Circuit's expansion of the *Larson-Dugan* doctrine to allow claims akin to those brought against federal agencies, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of records from other federal government components, pursuant to the common-law right of public access, significantly broadens this exception to sovereign immunity beyond the parameters articulated by the Supreme Court and, at first blush, is not easily reconciled with Supreme Court jurisprudence that waivers of sovereign immunity must be expressly set out by statute.  *See, e.g.*, *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2253–54 (2021) (referring to "this Court's precedents holding that Congress cannot abrogate state sovereign immunity in the absence of an 'unmistakably clear' statement" (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786 (1991)); *United States v. Bormes*, 568 U.S. 6, 9 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992) (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990))) (internal quotation marks omitted)).  Indeed, in the instant case, plaintiffs insist that "a *Vaughn* index is necessary" listing each record withheld by defendants, with appropriate justification to overcome the common law right of access, Pls.' Reply at 14, thereby importing and applying to a Legislative Branch entity a tool used in the FOIA litigation context, *see Union Leader Corp. v. United States Dep't of Homeland Sec.*, 749 F.3d 45, 49 n.3 (1st Cir. 2014) ("A Vaughn index is a now standard tool conceived by the District of Columbia circuit to facilitate resolution of FOIA disputes, derived from the D.C. Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)." (internal quotation omitted)).  Nonetheless, the Court is bound by D.C. Circuit authority, which demands this analysis.

whether" challenged government action violated statute); *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031–32 (9th Cir. 2013); *id.* at 1032 (following D.C. Circuit's practice when finding that "the question of '[w]hether the *Larson-Dugan* exception' applied 'merge[d] with the question on the merits,'" and therefore turning "to address the substantive merits of the mandamus claim before it'" (quoting *WLF II*, 89 F.3d at 901–02) (alterations in original)); *accord Int'l Fed'n. of Prof'l & Tech. Eng'rs v. United States*, 934 F. Supp. 2d 816, 821–22 (D. Md. 2013) (applying *Larson-Dugan* exception to avoid sovereign immunity bar and reach merits of suit by union and employees of legislative branch entities against Secretary of the United States Senate and Sergeant at Arms of the Senate in their official capacities, claiming parts of the Stop Trading on Congressional Knowledge Act were unconstitutional); *Ctr. for Arms Control & Non-Proliferation v. Lago*, Civ. No. 05-682 (RMC), 2006 WL 3328257, at *4–*6 (D.D.C. Nov. 15, 2006) (in suit for disclosure of materials used by defunct presidential commission in developing a report to the President, finding that sovereign immunity defense was "auxiliary to the ultimate question on the merits" as to whether the commission owed duty of disclosure under sunshine provisions of Federal Advisory Committee Act and therefore addressing the merits).

Accordingly, the merits of plaintiffs' request, under the common-law right of access, that defendants disclose 101 USCP written directives in effect on January 6, 2021 and OIG reports, including semiannual reports and audits, must be considered to assess whether sovereign immunity bars this lawsuit against defendants.

### 2. *No Common-Law Right of Access to Requested Records*

The Supreme Court has made "clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) (footnote omitted). This

right of access is "not absolute," *id.* at 598, but "left to the sound discretion of the trial court, a

discretion to be exercised in light of the relevant facts and circumstances of the particular case,"

*id.* at 599; *see SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) ("Of course, even if a

document is a record of the type subject to the common law right of access, the right is not

absolute: it is defeated when the government's interest in secrecy outweighs the public's interest

in disclosure.").  Binding precedent in this Circuit ensures that "the common law right of access

extends beyond judicial records to the 'public records' of all three branches of government."

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 936 (D.C. Cir. 2003) (citing

*WLF II*, 89 F.3d at 903–04); *see also Schwartz v. U.S. Dep't of Justice*, 435 F. Supp. 1203, 1204

(D.D.C. 1977) (holding "that Congress is subject to the common law rule which guarantees the

public a right to inspect and copy public records" and explaining that even though "Congress has

exempted itself from the requirements of the Freedom of Information Act, 5 U.S.C. § 552, by 5

U.S.C. § 551(1)(A)[,] [t]hat Act, however, is not coextensive with the common law rule").

> a)   *Displacement of the Common-Law Right of Public Access for OIG Reports and Certain Written Directives*

Certain documents still sought by plaintiffs are not subject to the common-law right of

public access, however, because a statute in place displaces that default right. Specifically, a

statute governing USCP operations provides, in pertinent part:

> [A]ny security information in the possession of the Capitol Police may be released
> by the Capitol Police to another entity, including an individual, *only if the Capitol
> Police Board determines* in consultation with other appropriate law enforcement
> officials, experts in security preparedness, and appropriate committees of
> Congress, *that the release of the security information will not compromise the
> security and safety of the Capitol buildings and grounds or any individual whose
> protection and safety is under the jurisdiction of the Capitol Police.*

2 U.S.C. § 1979(b) (emphasis added).  "Security information" is broadly defined as that which

"is obtained by, on behalf of, or concerning" the USCP and "is sensitive with respect to the

policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds." *Id.* § 1979(a)(1), (2).

As far as "security information" is concerned, then, Congress has crafted a specific statutory scheme regarding public access that involves the USCP Board and others considering the material and determining whether public release is appropriate—not the federal courts applying the common law test for the right of public access. Where Congress has enacted a particular statutory scheme governing access to certain information, that scheme "preempts the common law right" of public access, for "[i]t would make no sense" for Congress to create such a scheme only for courts to "turn and determine that the statute ha[s] no effect on a preexisting common law right of access." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 937 (D.C. Cir. 2003); *see also Milwaukee v. Illinois*, 451 U.S. 304, 313–14 (1981) ("[F]ederal common law . . . is resorted to in the absence of an applicable Act of Congress." (internal quotation omitted)).

Much of the requested material still at issue has been identified by a USCP document review team and by the USCP Board as "security information" and so is subject to this statutory scheme governing disclosure, not to the common-law right of public access. *See* Defs.' SMF ¶¶ 8; 13–14 (detailing that the requested OIG reports and 65 of the USCP written directives have been determined to be security information, under 2 U.S.C. § 1979(a), and implementing regulations authorized under 2 U.S.C. § 1979(d)); OGC Decl. ¶ 9; IG Decl. ¶ 8.

Specifically, 65 of the 101 written USCP directives at issue, constitute security information, under 2 U.S.C. § 1979(a), because these directives "contain operational information that would reveal [the] confidential sources and methods, investigative activities and techniques"

14

of USCP and "reflect the USCP's internal policies, rules, protocols, and guidance for USCP personnel on a variety of subjects." OGC Decl. ¶ 11. For example, some of these directives outline how USCP personnel are to respond to specific types of threats (e.g., active shooters, suicide bombers, hazardous material incidents), various physical and information technology security protocols (e.g., the handling of identification badges, the use of computer passwords and anti-virus software, and the maintenance of physical equipment like self-contained breathing apparatuses), and operating procedures for regular USCP law enforcement activities (e.g., the use of handcuffs, executing arrest and search warrants, vehicular pursuits, and building evacuations). *See* Defs.' Mot., Ex. C, List of Directives, ECF No. 19-7. Even a brief perusal of the titles of these 65 USCP directives makes clear the sensitive operational nature of the contents, with titles including, for example, "Use of Handcuffs/Restraints," "Use of Force," "Vehicular Pursuits," "Building Evacuations" and "Responding to a Suicide Bomber: 10-100 S (Sam)." *Id.*

Given the subject matter contemplated by these directives, defendants persuasively posit that if the "sensitive law enforcement information contained in the security information directives" were to be made available for the public, it "could unduly reveal the methods, techniques, and responses that the USCP employs for Capitol Grounds security and could also increase the potential for individuals and groups that wish to disrupt, attack, or harm the Capitol or the Congress to do so." *See* OGC Decl. ¶ 12. Their designation as "security information" and the resultant limitations on access contemplated by 2 U.S.C. 1979(b) is therefore proper.

The OIG reports at issue—both the semiannual reports from 2015 forward and all other reports, including audits, from 2008 forward—have also been designated "security information" by the USCP Board, which acted under its statutory authority to determine the release of security information, *see* 2 U.S.C. § 1979(b), (d), by specifically prohibiting the distribution of all OIG

information "including, but not limited to, audit reports, investigations reports, analyses, reviews, evaluations, [and] annual work plans" beyond the USCP or the USCP Board absent prior authorization.  *See* 2017 Order.  These limitations are justified in consideration of the fact that "the [OIG] obtains and secures national security and law enforcement sensitive information," *id.*, and, as a result, the office's reports could "include, for example, findings and recommendations regarding sensitive posting locations for USCP officers and personnel in the Capitol building and on Capitol Grounds in order to improve the security and safety of the Capitol and USCP protectees," or sensitive details regarding particular internal USCP programs in their recommendations for "comprehensive compliance."  IG Decl. ¶ 7.  Again, the OIG reports' designation as security information and the concomitant limitations on its access pursuant to 2 U.S.C. § 1979 (b) are proper.

As a result, the common-law right of public access is not in play as to the requested OIG reports (both the semiannual reports from 2015 forward and the other reports, including audits, from 2008 forward) and to the 65 USCP written directives classified as security information.

> b)   *Two-Part Test for Application of Common-Law Right of Public Access Applies to 36 USCP Non-Security Information Written Directives*

The remaining documents at issue that are not subject to a particular statutory disclosure scheme, must be considered under the two-step process outlined by the D.C. Circuit for determining whether the common-law right of access applies.  *Wash. Legal Found. v. U.S. Sent'g Comm'n* ("*WLF I*"), 17 F.3d 1446, 1451–52 (D.C. Cir. 1994).  First, a court must decide "whether the document sought is a 'public record,'" *id*. at 1451, and, if it is, then, second, "the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure," *id*. at 1451–52; *see also WLF II*, 89 F.3d at 899 (summarizing prior holding).  As to the first prong, under "federal common law," a "public record" subject to

the public right of access "is a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." *Id.* at 905; *see also Am. Int'l Grp.*, 712 F.3d at 3 (same). In applying the second prong of this test, courts "should focus on the specific nature of the governmental and public interests as they relate to the document itself," rather than engaging in "an abstract inquiry." *WLF I*, 17 F.3d at 1452.

In *WLF I*, the D.C. Circuit found that the "district court erred" by concluding categorically that the common-law right did not apply "without knowing" precisely which documents were at issue, and thus instructed that "the court should have analyzed each category of document requested." *Id.* Here, only one category of documents remains as to which the common-law right of access arguably applies, namely, the 36 USCP written directives in effect on January 6, 2021 that are not classified as security information. *See* OGC Decl. ¶ 8. As explained below, these 36 USCP written directives do not satisfy the two-part public access test.

> (1)    The 36 USCP Non-Security Information Written Directives Are Not Public Records.

As an initial matter, the 36 USCP Directives that do not qualify as security information also do not qualify as "public records," as that term has been described by the D.C. Circuit. Not every ministerial or preliminary action by a government entity amounts to the creation of a "public record." In fashioning the definition of "public records" subject to the common law right of public access, the D.C. Circuit articulated two guideposts: "adequately protect[ing] the public's interest in keeping a watchful eye on the workings of public agencies—an interest we regard as fundamental to a democratic state," *WLF II*, 89 F.3d at 905 (internal quotations and citations omitted), and "yet narrow enough to avoid the necessity for judicial application of the second-step balancing test to documents that are preliminary, advisory, or, for one reason or

17

another, do not eventuate in any official action or decision being taken," *id*.  As examples of the latter materials "not encompass[ed]" by the definition, the Circuit cited "the preliminary materials upon which an official relied in making a decision or other writings incidental to the decision itself—for example, the report of a blood test provided in support of an application for a marriage license, the job application of a would-be government employee, a government auditor's preliminary notes used in the preparation of an official report, or a cover memorandum circulated with a copy of an official report or study." *Id.* at 905-06.  *Cf.* 5 U.S.C. § 552(b)(2) (FOIA provision exempting from disclosure agency records that are "related solely to the internal personnel rules and practices of an agency").

The 36 non-security information directives at issue may be consulted to guide the action of USCP personnel but, as such, amount to preliminary material and advisory guidance that may only eventually lead to an official action.  The directives deal with topics like employee social media use, internal complaint and grievance processes, training, specific types of interactions with the public, and guidance governing investigations, arrests, and traffic enforcement.  *See* Defs.' Mot., Ex. C, List of Directives, ECF No. 19-7.  These written directives are internal memoranda and guidance for USCP employees that is intended to "establish forward-looking policies or guidance for [USCP] personnel in executing their job responsibilities."  OGC. Decl. ¶ 11.  Only after considering this guidance may USCP personnel reach a point of "tak[ing] official action or mak[ing] an official decision."  *Id*.  These documents do not "memorialize or record any official action taken by the [USCP]," *Pentagen Techs. Int'l, Ltd. v. Comm. on Appropriations of the U. S. House of Representatives*, 20 F. Supp. 2d 41, 45 (D.D.C. 1998), *aff'd*, 194 F.3d 174 (D.C. Cir. 1999), and instead concern only the sort of "administrative matters internal to the [USCP]" that the D.C. Circuit has held not to be public records, *WLF II*, 89 F.3d at

900.  Thus, the non-security information written directives do not constitute "public records" as the term has been construed by the D.C. Circuit, and therefore do not give rise to the common-law right of public access.

> (2)    *The Government's Interest in Secrecy Outweighs the Public's Interest in Disclosure of the 36 USCP Non-Security Information Written Directives.*

For good measure, even if the 36 USCP written directives qualified as public records, their requested disclosure would nonetheless fail the second part of the test for public access, which requires "balanc[ing] the government's interest in keeping the document[s] secret against the public's interest in disclosure."  *WLF II*, 89 F.3d at 903.  The D.C. Circuit has made clear that "the government has a compelling interest in protecting the secrecy of information important to our national security" and that the "need to guard against risks to national security interests overcomes a common-law claim for access."  *Dhiab v. Trump*, 852 F.3d 1087, 1098 (D.C. Cir. 2017) (internal quotations and citations omitted); *see also Am. Int'l Grp.*, 712 F.3d at 3 ("Of course, even if a document is a record of the type subject to the common law right of access, the right is not absolute: it is defeated when the government's interest in secrecy outweighs the public's interest in disclosure.").

All the written directives at issue—including the 36 not considered "security information" under 2 U.S.C. § 1979(a)—are designated "Law Enforcement Sensitive," a label widely used "throughout federal state, and local law enforcement agencies to control and safeguard sensitive information."  OGC Decl. ¶ 11.  The USCP treats information so labelled as accessible on a need-to-know basis only and as requiring "reasonab[le] protection from unauthorized disclosure."  *Id.*  While plaintiffs correctly assert that in general, "[m]atters of substantive law enforcement policy . . . are properly the subject of public concern," Pls.' Opp'n at 14 (quoting *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d

1082, 1093 (D.C. Cir. 2014)), the 36 non-security information directives at issue are administrative and personnel-related in nature and focus on the internal workings of USCP as an organization rather than the manner in which USCP substantively enforces the law.  As defendants point out, certain of these "USCP directives describe 'information related solely to the internal personnel rules and practices of an agency' and would fall under Exemption 2 of the Freedom of Information Act, if the USCP were subject to the [FOIA]."  OGC Decl. ¶ 11; *see also* FOIA, 5 U.S.C. § 552(b)(2) (exempting from federal agency disclosure obligations "matters that are . . . related solely to the internal personnel rules and practices of an agency").  Such internal administrative information may relate to "trivial administrative matters of no genuine public interest," *Pub. Citizen, Inc. v. Office of Mgmt. and Budget*, 569 F.3d 434, 439 (D.C. Cir. 2009) (addressing FOIA Exemption 2) (quoting *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992)), and even minimal public interest would, in any event, be outweighed by the government's interest in restricting access to Law Enforcement Sensitive information, disclosure of which, USCP cautions, "could unduly reveal the methods, techniques, and responses that the USCP employs for Capitol Grounds security and could also increase the potential for individuals and groups that wish to disrupt, attack, or harm the Capitol or the Congress to do so," OGC Decl. ¶ 12.

***

Consequently, disclosure of the requested documents under the common-law right of public access is not required.

### 3.      *No Statutory Duty to Disclose the Requested Records*

As an alternative to the common law right of access, plaintiffs point to various provisions of the organic statute creating the USCP OIG, 2 U.S.C. § 1909, as providing a statutory right of

20

access to the OIG semiannual reports, but their reasoning is predicated on repeated misreading of the statutory text and therefore fails.

First, plaintiffs assert that 2 U.S.C. § 1909(c)(2), which incorporates certain provisions of the Inspector General Act of 1978, 5 U.S.C. App. 3 (the "IG Act"), is a statutory source for defendants' purported duty to disclose the requested OIG semiannual reports.  *See* Am. Compl. ¶¶ 9-11.  This statutory provision, § 1909(c)(2), consists of three sentences, the first of which provides that:

> The Inspector General shall prepare and submit semiannual reports summarizing the activities of the Office in the same manner, and in accordance with the same deadlines, terms, and conditions, as an Inspector General of an establishment under section 5 (other than subsection (a)(13) thereof) of the Inspector General Act of 1978, (5 U.S.C. App. 5)[,]

2 U.S.C. § 1909(c)(2), and the last sentence of which provides that:

> The Chief [of the Capitol Police] shall, within 30 days of receipt of a report, report to the Capitol Police Board, the Committee on House Administration, the Senate Committee on Rules and Administration, and the Committees on Appropriations of the House of Representatives and of the Senate consistent with section 5(b) of such Act.

*Id.*  Plaintiffs seemingly conflate the first and last sentences to read § 1909(c)(2) as requiring the USCP OIG to disclose to the public, upon request, semiannual reports as other OIGs are required to do under 5 U.S.C. App. 3 § 5(c).  Yet, the incorporation of IG Act provisions in the first sentence only applies to the manner in which the USCP IG "prepare[s] and submit[s]" semiannual reports, not to its subsequent dissemination.  *See* 2 U.S.C. § 1909(c)(2).  The final sentence of § 1909(c)(2) addresses dissemination of the semiannual reports by the Chief of USCP to various congressional entities, and makes no provision for public access nor incorporates the public disclosure requirements of the IG Act.  *See id.*  In short, § 1909(c)(2) imposes no statutory duty on defendants to disclose the semiannual reports, and thus cannot trigger the *Larson-Dugan* exception to sovereign immunity.

Plaintiffs also invoke 2 U.S.C. § 1909(c)(1) as the source of a separate duty to disclose the remaining requested OIG reports, including audits.  Pls.' Opp'n at 40–45; Am. Compl. ¶¶ 12–17.  Again, their argument hinges on the reference to the IG Act in § 1909(c)(1), which provides:

> The Inspector General shall carry out the same duties and responsibilities with respect to the United States Capitol Police as an Inspector General of an establishment carries out with respect to an establishment under section 4 of the Inspector General Act of 1978, (5 U.S.C. App. 4), under the same terms and conditions which apply under such section.

2 U.S.C. § 1909(c)(1).  The plaintiffs contend that by dint of this subsection, two provisions of the IG Act—section 4(e)(1) and section 8M(b)(1)(A), each of which requires certain reports to be posted to the Inspector General's website—apply to impose a duty of disclosure on the USCP OIG.  Pls.' Opp'n at 40–41; Compl. ¶¶ 12–17; *see* 5 U.S.C. App. 3 § 4(e)(1) ("In carrying out the duties and responsibilities established under this Act, whenever an Inspector General issues a recommendation for corrective action to the agency, the Inspector General . . . not later than 3 days after the recommendation for corrective action is submitted in final form to the head of the establish, [shall] post the document making a recommendation for corrective action on the website of the Office of Inspector General.");[7] *id.* § 8M(b)(1)(A) ("The Inspector General of each Federal agency and designated Federal entity shall . . . not later than 3 days after any audit report, inspection report, or evaluation report (or portion of any such report) is submitted in final form to the head of the Federal agency or head of the designated Federal entity, as applicable, post that report (or portion of that report) on the website of the Office of Inspector General.").

---

[7]      This provision of the IG Act may be ambiguous as to whether the operative modal verb in section 4(e)(1)(C) is "shall" (from section 4(e)(1)(A)) or "may" (from section 4(e)(1)(B)).  The Court concludes that this provision is not incorporated by reference into 2 U.S.C.§ 1909(c)(1) regardless and that the distinction is without consequence here.

Neither provision of the IG Act relied upon by plaintiffs works to provide relief here. First, 2 U.S.C. § 1909(c)(1) makes no reference to, and therefore does not incorporate, 5 U.S.C. App. 3 § 8M(b)(1)(A).  Indeed, Section 8M's posting requirement only applies to the Inspectors General of "Federal agenc[ies]" and "designated Federal entit[ies]," both of which are defined terms that do not include the USCP.  *See* 5 U.S.C. App. 3 § 8M(b)(1)(A), (c); *id.* § 8G(a); *id.* § 12(5).  Second, while 2 U.S.C. § 1909(c)(1) does incorporate 5 U.S.C. App. 3 § 4(e)(1), the public posting requirement in section 4(e)(1) was not added until 2016, *see* Inspector General Empowerment Act of 2016, Pub. L. No. 114-317, § 4(d) , 130 Stat. 1595, 1602 (2016) (adding subsection 4(e)(1) to the IG Act), years after the enactment of 2 U.S.C. § 1909(c)(1) in 2005, *see* Legislative Branch Appropriations Act, 2006, Pub. L. No. 109-55, § 1004, 119 Stat. 572 (2005). The Supreme Court has recently explained that "a statute that refers to another statute by specific title or section number in effect cuts and pastes the referenced statute as it existed when the referring statute was enacted, without any subsequent amendments."  *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 769 (2019).  2 U.S.C. § 1909(c)(1) does precisely that, and so its reference to the "duties" under section 4 of the IG Act does not include the subsequently added duty of public disclosure.

In sum, contrary to plaintiffs' arguments, no statutory duty of disclosure for the requested USCP OIG semiannual reports or other reports, including audits, is imposed by 2 U.S.C. § 1909(c)(1) or (c)(2).

## IV.    CONCLUSION

For the reasons set forth above, plaintiffs have no right to demand disclosure of the 101 USCP written directives in effect on January 6, 2021 and the USCP OIG reports, including semiannual reports from 2015 forward and other reports, including audits, from 2008 forward,

and thus defendants' non-disclosure of these records does not trigger the *Larson-Dugan*

exception to sovereign immunity.  This case is therefore dismissed for lack of subject-matter

jurisdiction.

An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  September 20, 2022

_____

BERYL A. HOWELL
Chief Judge